RUTH BRUDER *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.

Fifth District No. 5—90—0329

Opinion filed July 17, 1992.

Donald V. Ferrell, of Jelliffe, Ferrell & Morris, of Harrisburg, for appellant.

Gordon Lambert, of Harris & Lambert, of Marion, for appellees.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Country Mutual Insurance Company, appeals from a declaratory judgment of the circuit court of Williamson County allowing plaintiffs, Ruth Bruder and Halie Bruder, a minor, by Ruth and John Bruder, her mother and father and next friends, to stack two uninsured motorist policies, namely, a business auto policy and a personal vehicle policy, making a total of $200,000 available for each plaintiff. The judgment also found plaintiffs' choice of arbitrator permissible, a decision which defendant also appeals. Plaintiffs have appealed that portion of the judgment which disallowed stacking of two coverages found under the business auto policy. In this cause, there are three issues we must address: (1) whether plaintiffs are entitled to stack insurance coverage under the personal vehicle policy and the business auto policy; (2) whether plaintiffs are entitled to stack the two separate coverages under the business auto policy; and (3) whether defendant's selection for arbitrator in this case is unfair to plaintiff and, as such, requires defendant's arbitrator's dismissal. We affirm in part and reverse and remand in part.

The parties submitted a stipulated statement of facts to the trial court which we adopt as our own. The following is a recitation of most of those facts with a few additions and deletions.

John Bruder and Ruth Bruder are husband and wife and live together as such in Carmi. Prior to February 21, 1986, defendant issued personal vehicle insurance policy number A12A1615926 on a 1985 Chevrolet motor vehicle, serial number 146053, to John and Ruth Bruder, with John and Ruth Bruder as the named insureds. That policy was renewed on February 21, 1986, for a semi-annual policy. Prior to November 9, 1985, defendant also issued business auto policy number AV1080210 on two vehicles, the first being a 1980 GMC motor ve-

hicle, serial number 519187, and the second being a 1983 Chevrolet motor vehicle, serial number 110700, to John Bruder, with John Bruder as the named insured. That policy was renewed on November 9, 1985, and a policy change was effected on December 3, 1985. John Bruder operated a business in Carmi. At all times in question, both policies of insurance were in full force and effect.

On May 5, 1986, Ruth Bruder was driving the above-described 1985 Chevrolet motor vehicle, serial number 146053, insured under policy number A12A1615926, on Main Street in Carmi. As she was stopped at an intersection waiting for a red light to change, she was rear-ended by a motor vehicle driven by Angelia Carter, which was immediately behind the vehicle driven by Ruth Bruder and which, in turn, had been rear-ended by a motor vehicle driven by Eddie Crawford. Either Angelia Carter or Eddie Crawford or both were legally at fault in the collision. Both the vehicles driven by Angelia Carter and Eddie Crawford were uninsured. Both Ms. Carter and Mr. Crawford have testified in their discovery depositions that neither had liability insurance at the time of the occurrence.

As a result of the collision, Ruth Bruder sustained personal injuries and medical expenses. At the time of the collision, she was pregnant in her third trimester of pregnancy. Subsequent to the collision, she went into premature labor, and a female child, Halie Bruder, was born. Plaintiffs claim that because of her premature birth, Halie Bruder has sustained personal injuries and medical expense, which is denied by defendant. Both plaintiffs made demands to settle with defendant under the uninsured motorist provisions of the two policies of insurance in question. In the event plaintiffs were rejected, plaintiffs designated their arbitrator, attorney John Womick, of Carbondale. Defendant rejected plaintiffs' offers, advising plaintiffs that it was the position of defendant that certain language in the personal vehicle policy precluded the personal vehicle policy from providing cumulative coverage with any other policy issued by defendant to Ruth Bruder or John Bruder.

Defendant appointed attorney James Bleyer of Bleyer & Bleyer of Marion as its arbitrator for arbitration under the terms of the personal vehicle policy only. Attorney Bleyer has handled many cases for defendant over the past 25 years. He does primarily defense work with defendant being a valued client to him. At the time of the hearing, Bleyer had approximately 15 cases pending in his office in which he had been retained by defendant to represent insureds of defendant and in which he would be paid by defendant for doing so. Attorney Womick, plaintiffs' chosen arbitrator, has handled cases against

defendant for many years. At the time of trial, he had claims pending against defendant, and/or its insureds for which he expected to be compensated on a contingent fee basis.

The personal vehicle policy which insured the vehicle driven by Ruth Bruder at the time of the accident had uninsured motorist coverage limits of $100,000 per person and $300,000 per accident. The business auto policy covering both the 1983 Chevrolet pickup truck and a 1980 GMC pickup truck had identical limits. The declarations page of the business auto policy showed a separate premium for uninsured motorist coverage on each vehicle.

The amended judgment issued by the trial court in the instant case found that the uninsured motorist coverage of $100,000 to Halie Bruder and the $100,000 to Ruth Bruder under the personal vehicle insurance policy number A12A1615926 could be stacked with the uninsured motorist coverage under the business auto policy number AV1080210 for a total of $200,000 per plaintiff. The trial court found that the antistacking provision in the personal vehicle policy was ambiguous. On the other hand, the trial court found that an antistacking provision in the business auto policy entitled "Our Limit of Liability" was not ambiguous and that such provision precluded the stacking of uninsured motorist coverage within the business auto policy.

I

Defendant contends that plaintiffs should not be allowed to stack any policies or coverages involved, whereas plaintiffs argue that they should be allowed to stack not only the personal vehicle policy and the business auto policy, but also the two coverages in the business auto policy. We will first consider whether plaintiffs are entitled to stack insurance coverage under the personal vehicle policy and the business auto policy. The trial court allowed such stacking, finding the antistacking provision in the personal vehicle policy ambiguous because such provision was found only in the personal vehicle insurance policy and not in the business auto policy. We agree with the trial court and adopt its reasoning on this issue.

■ When construing insurance policies, the agreement is to be enforced as written so long as it is unambiguous and only to the extent that it does not contravene public policy. (*Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539.) However, if any provision of the policy is ambiguous, such ambiguity must be construed in favor of the insured. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 180, 370 N.E.2d 1044, 1049; *Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330,

336, 312 N.E.2d 247, 250.) In determining whether there is an ambiguity, the provision must be read in its factual context and not in isolation. (57 Ill. 2d at 336, 312 N.E.2d at 250.) An examination of the clause at issue reveals an ambiguity.

As previously pointed out, the antistacking provision is found only in the personal vehicle policy. It reads:

"7. Other Vehicle Insurance in the Company. If this policy and any other vehicle insurance policy issued to you by this Company apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy."

Under the policy definition section, "you" is defined as "the person named on the declarations page of this policy and that person's spouse if a resident of the same household." The persons named on the declarations page of the personal vehicle insurance policy are John W. Bruder and Ruth A. Bruder. The person named on the declarations page of the business auto policy is limited to John Bruder. Ruth Bruder's name does not appear anywhere in the business auto policy. Because the named persons on the declarations pages of the two policies are different, the antistacking provision does not take effect.

Defendant argues that the case at bar is analogous to *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d 420, 401 N.E.2d 539, in which our supreme court found that an antistacking clause was unambiguous and not contrary to public policy and, as such, defeated the insured's contention that he was entitled to stack coverage in three uninsured motorist coverages he had purchased. We, however, find *Menke* distinguishable from the instant case.

The *Menke* case is similar in some respects. For example, in *Menke*, two separate policies had been issued. The first policy contained two uninsured motorist provisions covering two vehicles, much like the business auto policy here in question. The second policy covered only one vehicle, similar to the personal vehicle policy in the instant case. However, in *Menke*, both policies had been issued to the same named insureds, while in the instant case, as previously discussed, the declarations page contained different named insureds. Moreover, the antistacking provision in question in *Menke* was distinct from the instant provision. The *Menke* clause provided:

" 'With respect to any occurrence, accident, death or loss to which this and any other automobile insurance policy issued to the Named Insured by the Company also applies, the total limit of the Company's liability under all such policies shall not ex-

ceed the highest applicable limit of liability or benefit amount under any one such policy.' " (78 Ill. 2d at 423, 401 N.E.2d at 541.)

Also in *Menke*, the same antistacking provision appeared in each of the three policies, while in the instant case the antistacking provision entitled "Other Vehicle Insurance in the Company" was found in only the personal vehicle policy.

 █ We recognize that section 143a—2(6) of the Illinois Insurance Code (the Code) provides an insurer is not prohibited from including antistacking provisions in uninsured or underinsured motorist policies. (Ill. Rev. Stat. 1987, ch. 73, par. 755a—2 (6).) That section of the Code is essentially a codification of that portion of *Menke* which holds antistacking provisions are not *per se* violative of public policy (*Menke*, 78 Ill. 2d at 425, 401 N.E.2d at 539). While our General Assembly and supreme court have determined that antistacking provisions are allowable and not *per se* violative of public policy, the qualification that such provisions must be unambiguous remains. We have determined that the instant provision is ambiguous, and therefore, since ambiguities are construed in favor of the insured, we agree with the trial court that the personal vehicle policy and the business auto policy can be stacked and that plaintiffs may recover under both policies.

## II

The second issue we must address is whether plaintiffs are entitled to stack the two separate coverages under the business auto policy. Initially, the trial court determined that a total of $200,000 of uninsured motorist coverage was available to each plaintiff under the business auto policy. The trial court reasoned that because the declarations page of the business auto policy listed two separate vehicles without specifying the coverage for either vehicle separately, there was an ambiguity in the declarations page. Because the declarations page could be read in more than one way, the trial court found that the reading most favorable to the insured, that each plaintiff was entitled to $200,000 coverage, must be given. However, the judgment was later amended. At that time, the trial court found that the provision entitled "Our Limit of Liability" and subparagraph (1)(a) thereunder was not ambiguous, relying on *Cincinnati Insurance Co. v. Miller* (1989), 190 Ill. App. 3d 240, 546 N.E.2d 700. In that case, a nearly identical clause was found to be unambiguous. Citing that case, the trial court amended its original judgment and held that the total liabil-

ity of defendant under the business auto policy is $100,000 for plaintiff Halie Bruder, and $100,000 for plaintiff Ruth Bruder.

In this cause, plaintiffs appeal the trial court's decision finding plaintiffs entitled to only $100,000 each under the business auto policy. Plaintiffs argue that *Cincinnati Insurance Co.* is distinguishable from the case at bar and that a reading of the provision here in question will reveal an ambiguity and force a construction favorable to plaintiffs. Plaintiffs also argue that the "premium rule," which states that insurance companies should not be permitted to collect premiums for a given amount of coverage and thereafter apply limiting clauses to reduce or to absolve their liability to insureds (*Greenholt v. Inland National Insurance Co.* (1980), 87 Ill. App. 3d 638, 641, 410 N.E.2d 150, 152), is applicable in the instant case.

■ As previously discussed, liability limitations, when clear, are to be given effect. (*Menke*, 78 Ill. 2d at 424, 401 N.E.2d at 541.) If such provisions are ambiguous, there is a general rule that an insured is to be favored when construing such provisions. (*Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 180-81, 370 N.E.2d 1033, 1049.) The premium rule has been analyzed in a similar context by our colleagues on the First District Appellate Court in *Greenholt v. Inland National Insurance Co.* (1980), 87 Ill. App. 3d 638, 410 N.E.2d 150, in which they stated:

"[T]he 'Premium Rule' is best understood as a mere explication of the general rule that the insured is to be favored in construing insurance policies. Consequently, the 'Premium Rule' should be viewed as a rule of construction, and should not be applied unless the insurance contract reveals an ambiguity as to the amount of coverage intended." (87 Ill. App. 3d at 641, 410 N.E.2d at 152-53.)

As in *Greenholt*, the controlling question becomes whether the "Our Limit of Liability" clause in the policy is ambiguous. That clause states:

"1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

a. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury Liability shown in the declarations for 'Each Person.' "

This clause is similar to the limiting clause found in *Cincinnati Insurance Co. v. Miller* (1989), 190 Ill. App. 3d 240, 546 N.E.2d 700, a difference between the two clauses being that in *Cincinnati Insurance*

*Co.* the word "endorsement" is substituted for the word "declarations."

■■ In *Cincinnati Insurance Co.*, the court found the uninsured motorist endorsement to be unambiguous. *Cincinnati Insurance Co.* is distinguishable from the case at bar, however, because the clause in this case refers to the declarations in which ambiguity exists. As the trial court found in its original order:

> "6. That the provision entitled 'E. Our Limit of Liability' and subparagraph 1a. thereunder in Part VI—Uninsured Motorist Insurance of the Business Auto Policy, said provision appearing on page 4 thereof, is ambiguous for the reason that it attempts to limit recovery for damages resulting from bodily injury to any one person caused by any one accident to 'the limit shown in the declarations for "each person." ' The declarations page of the Business Auto Policy lists two separate vehicles without specifying the coverage for either vehicle separately. The court finds that said coverage under said declaration page can be read in more than one way and is, therefore, ambiguous and that construction should be given to the reading thereof most favorable to the insured. By reason of such, the court finds that coverage of $100,000 on each vehicle in said policy is available to each plaintiff and, therefore, a total of $200,000 uninsured motorist's coverage is available to each plaintiff under the Business Auto Policy."

The trial court in its subsequent amended judgment changed its position based on *Cincinnati Insurance Co.* We find that this was error and reverse; the original judgment of the trial court that the coverages under the business auto policy could be stacked was correct.

### III

The last issue we are asked to consider is whether defendant's selection for an arbitrator in this case is unfair to plaintiffs and, as such, requires that arbitrator's dismissal. Plaintiffs argue they should not be required to submit their case to an attorney who is regularly hired by defendant to represent its insureds. Defendant replies that when the selection of arbitrators is viewed in the totality of circumstances, it is apparent that plaintiffs have not been disadvantaged. Defendant points out that the arbitrator selected by plaintiffs has handled cases against defendant for several years and presently has claims pending against defendant or its insureds for which he will be compensated on a contingency basis. At any rate, defendant contends that both plaintiffs' and defendant's arbitrators must agree on a third

"neutral" arbitrator and, therefore, plaintiffs are not disadvantaged. We agree. 

The arbitration clauses in both the personal vehicle policy and the business auto policies state that when arbitration is conducted, each party selects an arbitrator and the two will then select a third arbitrator. There are no requirements listed in the policies as to who may serve as an arbitrator, nor does the Uniform Arbitration Act (the Act) (Ill. Rev. Stat. 1987, ch. 10, par. 101 *et seq.*) set out specific requirements. The Act does list reasons for *vacatur* of an award, one of which states that an award must be vacated if "[t]here was evident partiality by an arbitrator appointed as a *neutral* or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 10, par. 112(a)(2).) The case law in this area generally deals with questions concerning the bias or interest of the so-called "neutral" arbitrator. In such a situation, in order to warrant setting aside an arbitration award for interest or bias on the part of the arbitrator, the interest or bias must be definite, direct, and capable of demonstration rather than remote, uncertain, or speculative. (*Tamari v. Bache Halsey Stuart Inc.* (7th Cir. 1980), 619 F.2d 1196, 1200.) Additionally, it has been stated that it is not only actionable bias which must be avoided but also the appearance or impression of possible bias. *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 21 L. Ed. 2d 301, 89 S. Ct. 337.

Plaintiffs relied on the case of *Calabrese v. State Farm Mutual Automobile Insurance Co.* (1989), 187 Ill. App. 3d 349, 543 N.E.2d 215, but admit that it is distinguishable from the instant case because *Calabrese* concerns the alleged bias of the "third neutral arbitrator." Certainly, *Calabrese* and the other cases previously cited can be helpful in considering the instant situation; however, the circumstances herein are admittedly different. Here, we are concerned with the potential bias of defendant's arbitrator. Defendant's designated arbitrator, attorney James Bleyer, testified that he presently has approximately 15 of defendant's cases in his office in which he is the attorney of record. Attorney Bleyer has represented defendant for approximately 25 years and considers defendant to be a valued client. When questioned about whether he could be fair, Bleyer stated that he believed he could be fair and impartial. Mr. Bleyer's integrity is without reproach. Plaintiffs' attorney himself noted his respect for Mr. Bleyer in oral arguments. Specifically, plaintiffs' attorney stated that he was "not attributing any impropriety on [attorney Bleyer's] part as an eth-

ical lawyer." There is nothing in the record to suggest Mr. Bleyer's alleged bias other than his preexisting relationship with defendant.

■■ We believe that a past relationship such as the existing one between defendant and its designated arbitrator, Mr. Bleyer, can certainly be considered in determining whether the arbitrator can be fair and impartial. However, we refuse to say that as a matter of law such a relationship automatically disqualifies an arbitrator chosen by one of the parties. Undoubtedly, in any arbitration case, the parties will designate arbitrators who they believe will be sympathetic to their cause. It is up to the trial court in its discretion to decide whether the appearance of possible bias warrants the dismissal of such an arbitrator. Absent an abuse of that discretion, we will not reverse the trial court's determination to permit or deny the designated arbitrator to serve as arbitrator. In the instant case, the trial court did not abuse its discretion in permitting James Bleyer to serve as defendant's designated arbitrator.

For the foregoing reasons, the judgment of the circuit court of Williamson County is affirmed in part and reversed in part, and this cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

H. LEWIS and CHAPMAN, JJ., concur.