(No. 74155.—

RUTH BRUDER *et al.*, Appellees, v. COUNTRY MU-
TUAL INSURANCE COMPANY, Appellant.

*Opinion filed June 17, 1993.—Rehearing
denied October 4, 1993.*

HARRISON, J., joined by BILANDIC, J., concurring in part and dissenting in part.

Donald V. Ferrell, of Jelliffe, Ferrell & Morris, of Harrisburg, for appellant.

Gordon Lambert, of Harris, Lambert, Howerton & Dorris, of Marion, for appellees.

JUSTICE FREEMAN delivered the opinion of the court:

This case involves the question of whether uninsured motorist coverage under two insurance policies issued by Country Mutual Insurance Company (Country Mutual) may be "stacked," or aggregated.

## BACKGROUND

In May 1986, Ruth Bruder, then pregnant, was injured when the automobile she was driving was struck from the rear. Either or both of the drivers of the two other vehicles involved in the accident were at fault. Neither of those drivers was insured.

Bruder gave birth, prematurely, to a daughter, Halie, who suffers from cerebral palsy. It is a matter of dispute as to whether Halie's condition was caused by her pre-

mature birth and whether the premature nature of the birth was due to the accident.

Both Ruth and Halie were covered by the uninsured motorist protection afforded by two Country Mutual insurance policies. One of those policies was a "Personal Vehicle Insurance Policy" for the automobile which was involved in the accident. The other was a "Business Auto Policy" for two pickup trucks used in John Bruder's plumbing business. A premium was paid for each pickup truck under that policy.

Both John and Ruth, husband and wife, were named on the declarations page of the personal vehicle policy. However, only John Bruder's name appeared on the declarations page of the business auto policy.

The uninsured motorist coverage for bodily injury under each policy was limited to $100,000 for each person and to a total of $300,000 per accident. But because both policies provided uninsured motorist coverage, the Bruders asked Country Mutual to aggregate the coverage amounts.

Country Mutual declined, calling attention to "anti-stacking" provisions in both policies.

The Bruders, Ruth on behalf of herself and, together with John, on behalf of Halie, filed a declaratory judgment action (Ill. Rev. Stat. 1987, ch. 110, par. 2—701) in the circuit court of Williamson County against Country Mutual. The action sought to establish that the policies afforded $300,000 worth of uninsured motorist coverage for Ruth and Halie each. The Bruders arrived at that figure by doubling the $100,000 limit under the business auto policy, reasoning that separate premiums for the pickup trucks entitled separate $100,000 amounts of coverage, and then adding the $100,000 limit under the personal vehicle policy.

Apart from the attempt to aggregate coverage, the Bruders objected to Country Mutual's selection of James

Bleyer as one of three arbitrators to be named under the policies. Bleyer, an attorney, was regularly retained by Country Mutual to defend its insureds in litigation. Bleyer had so represented Country Mutual for many years and had several such cases pending when named as an arbitrator.

A bench trial on stipulated facts followed.

The trial judge ruled that coverage under the personal vehicle policy could be aggregated with coverage under the business auto policy. He concluded that the antistacking provision found in the personal vehicle policy was ambiguous, requiring a construction of the policies to favor stacking. Parenthetically, we note, although the written order mentioned only Ruth by name, the ruling applied to Halie as well for, as the order acknowledged, the disposition reached "both plaintiffs."

However, the trial judge concluded that the antistacking provision found in the business auto policy was unambiguous. He therefore ruled that aggregation of coverages associated with the separate premiums paid for the pickup trucks was precluded with respect to that policy alone.

A separate hearing was held regarding Country Mutual's selection of Bleyer. The trial judge ruled Bleyer could act as arbitrator.

The appellate court affirmed the decision to aggregate the coverages as between the two policies, adopting the trial judge's analysis. (232 Ill. App. 3d 221, 224, 226.) The court reversed the trial judge's decision regarding the business auto policy and permitted the doubling of coverage associated with the separate premiums paid for the pickup trucks. (232 Ill. App. 3d at 228.) The court affirmed the decision permitting Bleyer to arbitrate. (232 Ill. App. 3d at 230.) This appeal followed. 134 Ill. 2d R. 315.

## DISCUSSION

### Stacking of Uninsured Motorist Coverage

Insurance policy provisions intended to limit the aggregation of coverage—generally referred to as anti-stacking provisions—do not undermine the legislative purpose supporting the mandate of uninsured motorist protection (see Ill. Rev. Stat. 1987, ch. 73, par. 755a(1)). (*Glidden v. Farmers Automobile Insurance Association* (1974), 57 Ill. 2d 330, 335, citing *Morelock v. Millers' Mutual Insurance Association* (1971), 49 Ill. 2d 234, 239.) Public policy considerations, therefore, are no bar to an insurer's right to enforce provisions designed to so limit coverage. Ill. Rev. Stat. 1987, ch. 73, par. 755a—2; *Menke v. Country Mutual Insurance Co.* (1980), 78 Ill. 2d at 420, 425; *Glidden*, 57 Ill. 2d at 335.

Nor do antistacking provisions conflict, *per se*, with the so-called "premium rule." (See *Stryker v. State Farm Mutual Automobile Insurance Co.* (1978), 74 Ill. 2d 507, 513.) That "rule" holds that it is unfair to permit an insurer to collect premiums, be it for coverage afforded under separate policies or for separate vehicles under one policy, and thereafter apply a provision limiting or absolving liability. See *Greenholt v. Inland National Insurance Co.* (1980), 87 Ill. App. 3d 638, 641 (involving aggregation of coverage for two vehicles under one policy); *Westchester Fire Insurance Co. v. Industrial Fire & Casualty Insurance Co.* (1978), 58 Ill. App. 3d 439, 444 (involving aggregation of coverages under separate policies); but see *Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 106; *Maid v. Illinois Farmers Insurance Co.* (1981), 101 Ill. App. 3d 1065 (stating only that the "rule" applies when premiums have been paid under "separate policies").

As for any contract, resolution of questions about the parties' obligations under an insurance policy, including what is contemplated for the payment of multiple premiums, must begin with the agreement's express terms. (See *Squire v. Economy Fire & Casualty Co.* (1977), 69 Ill. 2d 167, 175.) That language stands as the singular representation of the parties' intentions. (See *Menke*, 78 Ill. 2d at 425.) But ambiguities may be revealed in the terms used in view of the particular circumstances involved. Then it can no longer be said that the terms of the agreement conclusively show what the parties intended. The answer to what the insured expected to receive and the insurer provide must be determined through other means rooted in public policy. Those means entail adopting a construction of the agreement to benefit the insured over other possible constructions favoring the insurer. (See *Menke*, 78 Ill. 2d at 423-24, 425; *Glidden*, 57 Ill. 2d at 336.) The "Premium Rule" is but an "explication" of that general consideration. *Greenholt*, 87 Ill. App. 3d at 641.

The issue of whether coverage of the policies here may be aggregated, arising as it does from stipulated facts, presents a question of law. (See *Plenderleith v. Edwards* (1927), 328 Ill. 431, 435; see also *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 864.) That question involves the possibility of stacking as between the personal vehicle and business auto policies as well as under the business auto policy alone. For that reason, the possibilities must be independently considered. (See *Squire*, 69 Ill. 2d at 175 (acknowledging, in a case involving the stacking of coverage under separate policies, the court's prior consideration of an antistacking provision in relation to stacking of coverages under one policy in view of extra premiums paid); see also *Greenholt*, 87 Ill. App. 3d at 639 (referring to "two-way" stacking).) As for each case, the critical point

remains that an insurer is entitled to enforcement of unambiguous antistacking provisions to the extent that such provisions represent terms to which the parties have agreed to be bound.

### Stacking of Coverage Afforded Under the Personal Vehicle Policy With Coverage Afforded Under the Business Auto Policy

Whether stacking was proper as between the different policies here turns on the operation of an "other insurance" provision found in the "general policy conditions" of the personal vehicle policy. The provision reads:

> "If this policy and any other vehicle insurance policy issued to you by this Company apply to the same accident, the maximum limit of our liability under all the policies will not exceed the highest applicable limit of liability under any one policy."

As we have indicated, stacking was permitted here based on the determination that the meaning of the provision was ambiguous given the facts presented. First, it was noted that the antistacking provision was found only in the personal vehicle policy. Moreover, only that policy had been issued to Ruth Bruder. Her name did not appear on the declarations page of the business auto policy. Because Ruth had not been issued the business auto policy, the condition precluding stacking could not be satisfied. Presumably, a similar analysis was applied as for Halie.

We disagree that the provision is ambiguous.

It makes no difference that the antistacking provision appears only in the personal vehicle policy. The provision neither contemplates nor requires consideration of a reciprocal provision in any other policy. The question of whether coverage afforded under the personal vehicle policy may be aggregated with that afforded under any other Country Mutual policy can be determined from the

provision standing alone. As we explain below, the provision's operation depends on nothing but a careful examination of the language in which it is written, as aided by the definitions provided for that purpose.

Generally, the provision precludes the stacking of coverage of the personal vehicle policy with any number of other Country Mutual vehicle policies when each policy affords coverage and each is issued to the person seeking to aggregate the coverages. The question is not whether coverage exists under the policies involved. The issue of whether the coverages can be stacked arises only because that fact is a given.

Specifically, operation of the provision to preclude stacking turns upon the condition represented by the phrase "issued to you." Whether that condition is satisfied as for each of the policies, in turn, hinges on the meaning of the term "you" as that term is defined in the personal vehicle policy. As is relevant here, "you" is so defined to mean "the person named on the declarations page of this policy and that person's spouse."

Importantly, the meaning of the term "you"—the term used to represent the insured seeking to aggregate coverage—is not confined to that person to whom the personal vehicle or any other Country Mutual policy actually was issued. Its meaning includes the spouse of that person. Further, the term "you" is defined with reference to the phrase "the declarations page of this policy," meaning the declarations page of the personal vehicle policy. Thus, the names of the persons appearing on the declarations page of the personal vehicle policy control the determination of whether the condition "issued to you" is satisfied as for "any other insurance policy" as well. In this case, "any other insurance policy" means the business auto policy issued to John Bruder. Insertion of the policy's definition for the term "you" generates two possibilities for determining to whom the business

auto policy was issued relevant under the facts here: (1) the business auto policy was issued to a person named on the declarations page of the personal vehicle policy; or (2) the business auto policy was issued to the spouse of a person named on the declarations page of the personal vehicle policy. Either possibility satisfies the condition in determining to whom the business auto policy "was issued" for purposes of operation of the antistacking provision.

Based on the definition of the term "you" that must be applied, there is no difficulty in determining whether it can be said that the personal vehicle and business auto policies were issued to either or both Ruth and Halie Bruder. Again, we point out that that question is distinct from whether Ruth and Halie could be said to be persons insured under the uninsured motorist provisions of the policies as each defined such persons. There is no dispute as to that fact. Both were.

There is no question that the personal vehicle policy was issued to Ruth. She was named on the declarations page of that policy. In fact, it can also be said that the policy was issued to Ruth because she is the spouse of John Bruder, who is also there named. For that same reason—because she is married to John Bruder—it can be said that the business auto policy was issued to Ruth even though she was not named on the declarations page of that policy. John Bruder's name appears on the declarations page of the personal vehicle policy and he is a person to whom the business auto policy was issued. Because Ruth is the spouse of John Bruder, to whom the business auto policy was issued, the policy was issued to Ruth within the contemplation of the antistacking provision.

Because both policies can be said to have been issued to Ruth, the condition of the antistacking provision is satisfied. Aggregation of coverage as between the two

policies is not available to Ruth. We therefore reverse the appellate court's decision to permit stacking in that respect as for Ruth.

Neither policy, however, can be said to have been issued to Halie Bruder. She is not named on the declarations page of either policy, and she is no one's spouse. Because the condition of the antistacking provision cannot be satisfied as for Halie, the provision cannot be enforced to bar the stacking of coverage for her as between the two policies. (See *Goss v. State Farm Mutual Automobile Insurance Co.* (1986), 147 Ill. App. 3d 866 (holding that, where policies were separately issued to a husband and wife for different vehicles, the wife was not "the named insured" under the "other insurance" provision of the husband's policy so as to preclude stacking of coverage afforded to the wife under his policy with coverage afforded by the wife's own policy).) We therefore affirm the appellate court's determination to the extent that Halie is entitled to aggregate coverage as between the two policies.

### Stacking of Coverage Afforded Under the Business Auto Policy

Whether stacking associated with the separate premiums paid for the pickup trucks under the business auto policy was proper turns on the operation of the following provision:

> "The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury shown in the declarations for 'Each Person.' "

The trial judge concluded that the provision was unambiguous and precluded stacking. That ruling was based on the decision in *Cincinnati Insurance Co. v. Miller* (1989), 190 Ill. App. 3d 240, involving a similar provision. The appellate court in this case found *Cincin-*

*nati Insurance* to be distinguishable and the provision above ambiguous. 232 Ill. App. 3d 221.

*Cincinnati Insurance* is, indeed, distinguishable from the present case. *Cincinnati Insurance*, like this case, involved an attempt to aggregate coverage associated with two vehicles insured under a single business auto liability policy. (See *Cincinnati Insurance*, 190 Ill. App. 3d at 248.) And, like this case, that question turned on the reading of a provision intended to limit the insurer's liability similar to that in Country Mutual's policy. In fact, the provision involved in *Cincinnati Insurance* was virtually identical, differing in only two words from the provision appearing in the business auto policy at issue here. The provision in *Cincinnati Insurance* contained the words "this endorsement" instead of the words "the declarations" used in Country Mutual's policy. Thus, the provision read:

> " 'The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit [of bodily injury] shown in this endorsement for "each person." ' " *Cincinnati Insurance*, 190 Ill. App. 3d at 249.

The appellate court in *Cincinnati Insurance* determined that the provision was unambiguous and limited the uninsured motorist protection to the amount stated on the endorsement. (*Cincinnati Insurance*, 190 Ill. App. 3d at 248-49.) Central to that determination was the fact that the endorsement in which the provision was contained was issued separately from the business auto liability policy. (See *Cincinnati Insurance*, 190 Ill. App. 3d at 243-44, 245.) The endorsement was used to add a third vehicle to those listed under the existing policy. (*Cincinnati Insurance*, 190 Ill. App. 3d at 243-44.) Apparently because the endorsement contained one coverage amount associated with that one vehicle, the court concluded the provision in the endorsement limiting lia-

bility was unambiguous. The provision's specific limit of liability to the amount "shown in the endorsement" could mean only that amount of coverage stated for the vehicle listed in the endorsement as a separate document for which only one additional premium was paid.

That analysis is of little help here. The declarations of Country Mutual's business auto policy include reference to both of the pickup trucks for which the policy was issued and for which separate premiums were paid. The question is whether the meaning of the provision limiting liability is ambiguous in light of that fact. See *Menke,* 78 Ill. 2d at 423-24.

A reproduction of the declarations page of the Country Mutual policy is appended to this opinion. Most of that page consists of a series of columns. The third column from the left is headed "YEAR MAKE," indicating that within that column appear entries identifying the vehicles covered under the policy by the maker and year of production of each. The pickup trucks covered are listed there. The entry "83 CHEVR," corresponding to a 1983 model Chevrolet pickup truck, is listed in the column, as is the entry "80 GMC," corresponding to a 1980 model General Motors Corporation pickup truck. The "83 CHEVR" entry is listed in the column above the entry "80 GMC." To the right of the column for the make and year of the covered vehicles are other columns with headings corresponding to the premium amounts associated with the various coverages set out in the policy.

Reading from left to right, other column headings include "PART IV BODILY INJURY," "PART IV PROPERTY DAMAGE," "PART V MEDICAL PAYMENTS," "PART VI UNINSURED MOTORIST," "UNDERINSURED MOTORIST," "PART VII COLLISION," "PART VII OTHER PHYSICAL DAMAGE," "CARGO," and, to the farthest right, "TOTAL PRE-

MIUM." The page is structured so that, reading to the right, as one would normally, from the entry for the year and make of each covered vehicle in the column headed "YEAR MAKE" at the left, the premiums charged and the total for each vehicle appear in a line, like words in a sentence. The sentence-like line of column entries for premium amounts and their total for the "83 CHEVR" pickup truck appear above the sentence-like line of column entries for premium amounts and their total for the "80 GMC" pickup truck.

Understanding the arrangement of entries in the columns is important in determining the effect of what is not there included. Specifically, the limits of liability are not set out within the column arrangement in the same manner as the page lists the premium amounts and totals. That is, there is no column for which the limit of liability for bodily injury is to be listed like a premium amount so that the $100,000 limit for each person would appear in both sentence-like lines for the pickup trucks.

It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. It could easily be interpreted that an insured should enjoy a total limit of $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck. There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded. See *Squire*, 69 Ill. 2d at 179-80 (holding that the existence of two declarations pages, both setting $10,000 limits for liability for each person, created an ambiguity permitting the aggregation of those coverage amounts).

But that is not the case. The limit of liability of $100,000 for bodily injury for "each person" is noted

only once on the page. The limit is set forth outside and above the column for "PART IV BODILY INJURY." Other limits of liability similarly appear above the columns for which the limits are associated.

The Bruders insist that the declarations page is subject to no less than three possible constructions, making it necessary to construe the policy against Country Mutual. First, they argue the limit of liability can be read as applying for each vehicle. Because it is stated apart from the column arrangement, the limit must be read twice, once for each vehicle listed. The result would be the aggregation of $200,000 of coverage the Bruders seek. Second, they argue the limit can be read as the total amount available for either or both of the pickup trucks, resulting in $100,000 of coverage. Finally, the Bruders argue that the limit can be read as an amount which is to be proportionally decreased by the number of vehicles covered. Given the two pickup trucks here, the total amount of coverage afforded would be $50,000.

The touchstone in determining whether ambiguity exists regarding an insurance policy, however, is whether the relevant portion is subject to more than one reasonable interpretation (see *Monsalud v. State Farm Mutual Automobile Insurance Co.* (1991), 210 Ill. App. 3d 102, 107; *Gibson v. Country Mutual Insurance Co.* (1990), 193 Ill. App. 3d 87, 90), not whether creative possibilities can be suggested. Reasonableness is the key.

The declarations page here is subject to only one interpretation which is reasonable. Although two entries are found in the column "PART IV BODILY INJURY" for the premiums paid for each pickup truck, there is only one corresponding amount of liability for bodily injury for each person appearing on the page. That is the $100,000 amount appearing outside and above that column. The only reasonable interpretation is that the policy provides only $100,000 of liability for bodily injury

occasioned to each person insured no matter how many vehicles are listed in the column arrangement and no matter how many premiums are paid. The representation of the limit of liability for bodily injury for each person on the declarations page is consistent with the language of the antistacking provision. It is also consistent with the language in the policy that the antistacking provision would apply "regardless of the number of covered autos."

Because there is no ambiguity in the limitation of liability provision, the provision must be applied as written. Aggregation of coverage associated with the premiums paid for the two pickup trucks under the business auto policy is not available. We therefore reverse the appellate court's determination to permit stacking as for both Ruth and Halie.

## SELECTION OF ARBITRATOR

Initially, Country Mutual had argued that we should not address the Bruders' argument as to the selection of James Bleyer as the company's arbitrator. Country Mutual pointed out that the Bruders' objection constitutes "cross-relief," but that the cover of the Bruders' brief did not reflect that fact as required by Supreme Court Rule 315(g) (134 Ill. 2d R. 315(g)). We note that the Bruders subsequently amended the cover of their brief to indicate the nature of the relief sought. We note also that Country Mutual responded to the Bruders' argument in its reply brief as allowed in Rule 315(g) despite pointing out the initial nonconformity of the cover of the Bruders' brief. For those reasons, we see no impediment to addressing the issue.

The personal vehicle and business auto policies contain substantially similar provisions governing the arbitration of unresolved disputes regarding nonpayment of uninsured motorist coverage claims. The provisions pro-

vide that, upon a written demand for arbitration by the insured or the insurer, each is to select one of three arbitrators. A third arbitrator is to be selected by the other two. If there is disagreement in the selection of the third arbitrator, either the insured or the insurer may request that the entire arbitration be submitted to the American Arbitration Association for resolution. The "rules governing procedures and admission of evidence in courts of law" are expressly made applicable to arbitration under the policies.

Pursuant to those provisions, Country Mutual selected Bleyer. The Bruders selected John Womick, also an attorney, who has been and is presently involved in the representation of clients who have claims pending against either or both Country Mutual and its insureds.

The question of whether Country Mutual should have been permitted to select Bleyer as an arbitrator can be resolved properly only by keeping in mind the procedural context within which the question was presented. While the Uniform Arbitration Act, the provisions of which are applicable here, permits an arbitration award to be challenged based on "corruption" or "misconduct" with respect to an arbitrator not "appointed as a neutral" (Ill. Rev. Stat. 1987, ch. 10, par. 112), the issue here does not arise from such a challenge. No arbitration has taken place. In fact, the objection to the selection of Bleyer preceded even the selection of a third arbitrator.

Instead, the objection to the selection of Bleyer was made as part of the declaratory relief the Bruders sought in their action to have the right to stack coverage under the policies judicially determined. Like resolution of the question of stacking, the judicial determination as to Country Mutual's right to select Bleyer is a matter governed by the terms of the policies to the extent what is there provided does not conflict with law or prevailing public policy.

In the hearing on the issue, Country Mutual took the position that, because of its preemptive nature, the Bruders' objection should be rejected as premature. While that contention has initial appeal, it misapprehends the Bruders' argument.

The Bruders' position is that a person who enjoys an established and valued association with an insurer, providing legal representation for a fee, and who expects the association to continue, cannot participate as an arbitrator. That is so, the Bruders offer, because the association creates a bias undermining the concept of impartiality which must be read into the policy provisions at issue here. We note that that argument is not grounded on the duty to disclose dealings that might create an impression of bias as recently addressed in *Drinane v. State Farm Mutual Automobile Insurance Co.* (1992), 153 Ill. 2d 207, involving attempts to vacate an award. It is the appearance of bias that the Bruders contend is all important because proving bias is "practically impossible."

The Bruders' contentions have merit, to a point. Any effort to police bias (see *Commonwealth Coatings Corp. v. Continental Casualty Co.* (1968), 393 U.S. 145, 149, 21 L. Ed. 2d 301, 305, 89 S. Ct. 337, 339) at this stage in the arbitration process must yield, however, to a recognition of what is permitted under the policy provisions to which the parties have assented and the Uniform Arbitration Act (see *Drinane*, 153 Ill. 2d at 211).

Neither of the policies here constrains the insured's or insurer's choice of arbitrator to persons having no past or present business relationship or financial association with either or both parties. In fact, it may be inferred that the policies were drafted in anticipation that the insured and the insurer would choose arbitrators having some tie to, or harboring some sympathy for the plight of, each, respectively. That is evident in what the policies provide in relation to the selection of a third ar-

bitrator and what is permitted if disagreement prevents that selection. Further, the Uniform Arbitration Act permits the parties to agree to the method of selecting arbitrators. (Ill. Rev. Stat. 1987, ch. 10, par. 103.) Nothing in the Act can be read to preclude a person having a pre-existing business relationship or financial association with either or both parties involved from serving as an arbitrator. See Ill. Rev. Stat. 1987, ch. 10, par. 103 (providing that the arbitration agreement controls the method of appointment of arbitrators).

Safeguards provided in arbitration provisions to insure impartiality in the process like those here relating to the selection of a third arbitrator must be given the opportunity to operate without judicial intrusion. (See *Drinane*, 153 Ill. 2d at 212 (noting that the parties willingly accept the absence of safeguards associated with trial proceedings in return for the final and speedy resolution of matters arbitration is designed to provide).) It must be enough that the obligation of frank disclosure of interests has been met to address the fear of impartiality of any one arbitrator in the stages of the arbitration process preceding the actual determination of the. award. (*Drinane*, 153 Ill. 2d at 214, 215, 216.) Barring success of those safeguards to insure impartiality in the arbitration process, the Uniform Arbitration Act remains an avenue of relief by providing circumstances for an award's vacation based on "evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party." Ill. Rev. Stat. 1987, ch. 10, par. 112(a)(2).

Finally, we would note that, as with respect to the Bruders' right to stack coverage, the declaration of Country Mutual's rights with respect to the selection of an arbitrator presented a question of law. (See *State Farm Fire & Casualty Co. v. Shelton* (1988), 176 Ill. App. 3d 858, 864-65.) The trial judge, however, did allow

evidence to be presented in the form of Bleyer's testimony that he could be fair and impartial. Such testimony was unnecessary here both because there was no dispute creating an issue of fact as to the meaning of the terms used in the arbitration provisions and because Bleyer's testimony was irrelevant to the determination of Country Mutual's right to select him.

Because neither the policies nor the Uniform Arbitration Act precludes either party from selecting a person with whom the party enjoys a business relationship or financial association, the Bruders must be satisfied, at this point, with the promise that efforts in rendering the award be as intended under the policies. We therefore affirm the decision to permit Country Mutual to select Bleyer as an arbitrator.

For the reasons stated, the judgments of the appellate and circuit courts are affirmed in part and reversed in part, and the cause is remanded to the circuit court.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part;*
*cause remanded.*

JUSTICE HARRISON, concurring in part and dissenting in part:

I agree that we should affirm the decision to permit Country Mutual to select Bleyer as an arbitrator. I also agree with the majority's conclusion that stacking is not available with respect to coverage associated with the premiums paid for the two pickup trucks under the business auto policy. To reach this conclusion, I think we need look no farther than part VI, paragraph (E)(1), of that policy, which expressly states that the $100,000 limit for bodily injury shown in the declarations for "Each Person" applies "[r]egardless of the number of

covered autos." There is nothing ambiguous about this language, and I see nothing in the remainder of the policy or the facts of this case which would render it ambiguous.

Where I must part company with my colleagues is on the question of whether stacking is proper as between the personal vehicle policy and the business auto policy. I would hold that aggregation of coverage under those policies is available to Ruth as well as Halie. As the majority itself acknowledges, the personal policy's antistacking provision only precludes aggregation of coverage with other Country Mutual vehicle insurance policies "when each policy affords coverage and each is issued to the person seeking to aggregate the coverages." (156 Ill. 2d at 187.) The appellate court correctly recognized that this limitation is inapplicable here, for each policy was not issued to Ruth. While the personal vehicle policy was issued to her (as well as to John), the declarations page of the business auto policy plainly shows that it was issued in John's name alone.

The majority attempts to avoid this conclusion by invoking the definitions contained in the personal policy. By interpreting those definitions in a literal and narrow fashion, the majority, in effect, elevates Ruth to the status of an additional named insured under the business policy, alongside her husband, John. The problem with this construction is that it directly conflicts with the terms of the business policy itself. From the plain language of that policy, it is manifest that the parties intended only that Ruth be covered, not that she occupy the same status as her husband. This distinction is no mere technical formality, for under the policy, named insureds are the policyholders and, as such, possess qualitatively different rights and obligations (including the obligation to pay premiums) than those who simply enjoy the policy's protection as insureds.

I know of no principle of law authorizing us to work so substantial an alteration in the parties' contractual relationship. To honor the terms of the agreements, as we must, we should determine the question of whom a policy has been "issued to" by reference to the provisions of that particular policy, and not some other. As I have noted, and as the appellate court held, such an approach yields the conclusion that the business policy was not "issued to" Ruth and that she was therefore not barred from aggregating coverage by the antistacking provision of the personal policy. *Goss v. State Farm Mutual Automobile Insurance Co.* (1986), 147 Ill. App. 3d 866.

This interpretation is no less reasonable than the one proffered by the majority. Because more than one reasonable interpretation exists, we should acknowledge, at the very least, that the antistacking provision is ambiguous. It is axiomatic that all doubts and ambiguities must be resolved in favor of the insured. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 74.) Accordingly, I would hold that, as an insured under both the personal and business policies, Ruth is entitled to the full coverage afforded by each. On this issue I therefore respectfully dissent.

JUSTICE BILANDIC joins in this partial concurrence and partial dissent.

4394    BRUDER JOHN

**COUNTRY COMPANIES**
COUNTRY MUTUAL INSURANCE CO.
P.O. BOX 2100
BLOOMINGTON, IL 61701

BUSINESS AUTO DECLARATIONS

| | 614538-6 | AV1080210 | 089 WHITE |
|---|---|---|---|
| | 02093 | DONALD C ERKMAN | |

POLICY CHANGE

DECLARATIONS EFFECTIVE 12-03-85
POLICY EFFECTIVE 11-05-85 12-01 AM CST

FOR SERVICE CALL 013/382-4677

| # | | | | | | 100/300 | 100 | 76.70 | 630 | 1190 | 630 | 1860 | 3490 | 26750 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 001 | 83 CHEVR PICKUP | 110700 H 079AI 033 | | ACV | | 9980 | | 76.70 | 630 | 1190 | 1860 | 4340 | | 25690 |
| 002 | 80 GMC PICKUP | 519187 H 079AI 033 | | ACV | | 9980 | | 76.70 | 630 | 1150 | | | | |

TOTAL ESTIMATED ANNUAL PREMIUM        3524.00
TOTAL ANNUAL INSTALLMENT CHARGE        21.00
4 INSTALLMENTS PAID QUARTERLY

| 001 | 83 CHEVR 110700 COVERAGE | -3477 |
| 002 | 80 GMC 519187 COVERAGE | -1844 |
| | TOTAL | -2115 |

12-05-85