# Illinois Official Reports

## Appellate Court

*Bowers v. General Casualty Insurance Co.*, 2014 IL App (3d) 130655

| | |
|---|---|
| Appellate Court Caption | MARILYN K. BOWERS and ROBERT BOWERS, Plaintiffs-Appellees, v. GENERAL CASUALTY INSURANCE COMPANY, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-13-0655 |
| Filed | November 5, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly allowed plaintiffs to stack the $250,000 underinsured motorist limits for each of the insureds' three vehicles with respect to the claim for the injuries suffered by one plaintiff when an underinsured motorist drove his vehicle into a convenience store building in which she was standing, since plaintiffs' policy listed each vehicle separately in the vehicle coverages section, thereby creating an ambiguity to the extent that the insureds could reasonably presume separate underinsured motorist coverage limits applied to each covered vehicle and that the limits could be stacked because separate underinsured motorist premiums were paid for each vehicle. |
| Decision Under Review | Appeal from the Circuit Court of Bureau County, No. 13-MR-12; the Hon. Marc P. Bernabei, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Jo T. Wetherill (argued) and Michael J. Mersot, both of Quinn, Johnston, Henderson, Pretorius & Cerulo, Chtrd., of Peoria, and Robert Marc Chemers, of Pretzel & Stouffer Chtrd., of Chicago, for appellant. |
|---|---|
|  | Philip M. O'Donnell (argued), of Kingery, Durree, Wakeman & O'Donnell, of Peoria, for appellees. |
| Panel | PRESIDING JUSTICE LYTTON delivered the judgment of the court, with opinion. Justice Carter concurred in the judgment and opinion. Justice Wright specially concurred, with opinion. |

**OPINION**

¶ 1 Plaintiffs, Marilyn and Robert Bowers, filed a complaint against defendant, General Casualty Insurance Company, seeking a declaratory judgment that their underinsured motorist (UIM) coverage for three vehicles was not limited to one vehicle. The trial court granted summary judgment in plaintiffs' favor, finding that the $250,000 UIM limit for each vehicle could be aggregated, or stacked, to arrive at a maximum coverage limit of $750,000. General Casualty appeals, claiming that the provisions of the policy are unambiguous and prohibit stacking of UIM coverage. We affirm.

¶ 2 On August 8, 2011, Marilyn sustained injuries when an underinsured motorist drove his vehicle into a convenience store building in which Marilyn was standing. At the time of the accident, plaintiffs were covered under a General Casualty insurance policy that provided underinsured motorist coverage for three vehicles. The declarations page for the policy listed three limits of UIM coverage and three premiums for each listed vehicle. Coverage information was provided in a section entitled "Vehicle Coverages" and was listed in the following table format:

|  | 2005 Pont Grand Prix | | 1997 Chry Sebring JXI | | 2005 Ford F150 | |
|---|---|---|---|---|---|---|
|  | Limit | Premium | Limit | Premium | Limit | Premium |
| UIM | $250,000 Ea Person |  | $250,000 Ea Person |  | $250,000 Ea Person |  |
| Bodily Injury | $500,000 Ea Accident | $24.00 | $500,000 Ea Accident | $24.00 | $500,000 Ea Accident | $29.00 |

A provision directly above the table of vehicles was entitled "Coverage Information." It stated:

"The coverages listed below apply separately for each vehicle and are provided only where a premium or Included is shown. The Limit of Liability applies separately for each vehicle."

¶ 3 UIM coverage was added to the Bowers' policy by an endorsement. Among other things, the endorsement provided:

"We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

    1. Sustained by an 'insured'; and

    2. Caused by an accident."

The endorsement also contained a "Limit of Liability" provision, which stated:

"The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorist Coverage is our maximum limit of liability for all damages, including damage for care, loss of service or death, arising out of 'bodily injury' sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorist Coverage is our maximum limit of liability for all damages for 'bodily injury' resulting from any one accident.

    This is the most we will pay regardless of the number of:

        1. 'Insureds';

        2. Claims made;

        3. Vehicles or premiums shown in the Schedule of Declarations; or

        4. Vehicles involved in the accident."

¶ 4      The underinsured motorist that drove into the building carried a per-person bodily injury liability limit of $100,000, which was paid to Marilyn. The Bowers filed a declaratory judgment action against defendant claiming that the policy provided up to an additional $650,000 because the UIM coverages could be stacked. General Casualty responded that the policy only provided up to an additional $150,000, because the UIM limit was $250,000. Both parties filed motions for summary judgment.

¶ 5      The trial court granted the Bowers' motion for summary judgment and denied General Casualty's motion. The court found that the table on the declarations page, which listed each of the three UIM limits, and the use of the term "the limit" in the endorsement led to an ambiguous interpretation. It then construed the contract against General Casualty, thus allowing stacking of the UIM coverages.

¶ 6                                     ANALYSIS

¶ 7      General Casualty argues that the trial court erred in finding that the insurance policy allowed the Bowers to stack their underinsured motorist vehicle coverage limits listed for each vehicle to arrive at a maximum per-person coverage limit of $750,000. It argues that the layout of the declarations page, together with the antistacking provision, is unambiguous and does not allow the insured to stack the coverage limits. It further argues that the term "separately," as used in the coverage information section, clarifies any ambiguity that may be found in the policy's provisions.

¶ 8      The construction of an insurance policy is a question of law that this court reviews *de novo*. *Smagala v. Owen*, 307 Ill. App. 3d 213, 217 (1999). Our primary objective in construing an insurance policy's language is to ascertain and give effect to the parties' intent, as expressed in their agreement. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Clear and unambiguous policy terms will be given their plain and ordinary meaning, and the policy will be applied as written, unless it contravenes public policy. *Id*. If the terms are

susceptible to more than one meaning, the policy is ambiguous and will be strictly construed against the insurer that drafted it. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 456 (2010). In construing the drafter's language, we must interpret the policy as a whole, considering the type of insurance purchased, the nature of the risks involved and the contract's overall purpose. *Id*. Provisions that limit or exclude coverage will be interpreted liberally in the insured's favor and against the insurer. *Hobbs*, 214 Ill. 2d at 17.

¶ 9     The Illinois Insurance Code allows for the use of antistacking provisions in motor vehicle insurance policies (215 ILCS 5/143a-2(5) (West 2010)), and our supreme court has stated that antistacking provisions generally are not contrary to public policy (*Hobbs*, 214 Ill. 2d at 17-18). Thus, unambiguous antistacking clauses will be given effect. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 184 (1993).

¶ 10    The seminal case in the interpretation of antistacking clauses is *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179 (1993). In *Bruder*, our supreme court stated, in *dicta*, that it "would not be difficult to find an ambiguity" where an insurance policy listed the uninsured or underinsured motorist coverage amounts and premiums separately for each vehicle covered under the policy. *Id*. at 192. The court noted that, where that occurs, it is "reasonable to assume that the parties intended" that, in return for the premiums paid, equal amounts of uninsured or underinsured motorist coverage were afforded, regardless of language indicating otherwise in the policy. *Id*. However, in *Bruder*, the uninsured motorist coverage was listed only one time in the policy, even though separate premiums were listed for each vehicle covered. The court found that "[t]he only reasonable interpretation" was that the policy provided only the UIM amount listed one time for each person injured regardless of the number of vehicles insured or premiums paid. *Id*. at 193. Since the declarations page listed the UIM coverage only one time, the court ruled that there was no ambiguity in the limit of liability provision and applied it as written, without allowing aggregation or stacking of coverage. *Id*. at 194.

¶ 11    The distinction between listing the UIM limit of liability once and listing it more than once was crucial to our supreme court's determination in *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11 (2005). In *Hobbs*, the insurance policy in question listed the limits of UIM coverage only once on the declarations page. *Hobbs* noted the similarities between the insurance policy and the policy in *Bruder*. *Id*. at 21. The antistacking provision in the policy tied the limit of UIM coverage to the limit shown on the declarations page. The declarations page listed the premiums for the two vehicles separately but listed the relevant limit of liability only once. The supreme court read the antistacking provision in conjunction with the declarations page and determined that the policy was unambiguous and that the coverages did not stack. *Id*. *Hobbs* did not overrule *Bruder* but rather used the *Bruder* analysis in determining that coverage could not be stacked.

¶ 12    The case law since *Bruder* has followed the same line of reasoning when considering whether to allow the stacking of uninsured or underinsured motorist coverage. In *Estate of Goben*, the court relied on the *Bruder* decision and found that because the UIM coverage was set forth two times on the declarations page, once for each covered vehicle, there were two possible interpretations of the policy: one that provided UIM coverage based on one limit as described in the antistacking provision, and one that provided two coverage amounts for the two UIM limits and the corresponding premiums listed on the declarations page. Based on the ambiguity, the court construed the policy strictly against the insurer that drafted it and allowed the limits to be stacked. *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 648-49

(1999); see also *Allen v. Transamerica Insurance Co.*, 128 F.3d 462 (7th Cir. 1997) (holding that the antistacking clause was ambiguous because the declarations page to which the clause referred listed two vehicles with separate UIM coverages and separate premiums).

¶ 13 *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797 (2000), also permitted stacking. In *Yate*s, the policy covered two vehicles and contained antistacking language in the endorsement nearly identical to the language in this case. The underinsured motorist coverage was said to be limited to the liability shown on the declarations page and was described as "the limit" in the antistacking provision. *Id*. at 799. The declarations page identified two vehicles that were covered, UIM policy limits were listed under " 'auto one' " and " 'auto two,' " and a separate premium was listed for each vehicle. The declarations page also contained a statement that provided, " 'COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY OR THE WORD "INCLUDED" ARE SHOWN FOR COVERAGE.' " *Id*. at 800. *Yates* held that the declarations page was inconsistent with and contradictory to the antistacking provision in the endorsement. The court construed the policy in favor of the insured, and the UIM coverages were stacked. *Id.*; see also *Johnson v. Davis*, 377 Ill. App. 3d 602, 609 (2007) (stacking allowed based on ambiguity where the antistacking provision referred to a singular "limit," but the policy named four vehicles and listed separate UIM coverages for each of the vehicles).

¶ 14 In this case, the insurance policy contains contradictory provisions. The underinsured motorist endorsement contains an antistacking provision, which states that the "limit of liability" is the maximum limit the company would pay for all damages, regardless of the vehicles or premiums shown. On the other hand, the antistacking provision also states that the limit of liability is based on the description in the declarations page, which states that coverage is provided where a premium and a limit of liability are shown. The declarations page shows three UIM coverages of $250,000 and a UIM premium for each of the three vehicles. The language contained in the declarations page is inconsistent with the endorsement's antistacking provision and creates an ambiguity. Since the policy contains inconsistent provisions, we must construe it against the drafter, General Casualty.

¶ 15 General Casualty argues that there is no *per se* rule that listing the UIM limits more than once on the declarations page creates an ambiguity resulting in allowing the coverages to be stacked. In *Hobbs*, the court stated that the declarations page of a policy is but one piece of the insurance agreement and cannot address every conceivable coverage issue. *Hobbs*, 214 Ill. 2d at 23. However, when read in conjunction with the antistacking provision, an ambiguity may arise. See *Yates*, 311 Ill. App. 3d at 800; *Johnson*, 377 Ill. App. 3d at 609. In this case, reading those two provisions together creates an ambiguity.

¶ 16 General Casualty cites *Ritter* in support of its position. *Pekin Insurance Co. v. Estate of Ritter*, 322 Ill. App. 3d 1004 (2001). In *Ritter*, the appellate court found that the antistacking provision, which contained language identical to the endorsement policy provision here, was unambiguous and prohibited stacking. However, *Ritter* does not attempt to reconcile its decision with the *Bruder dicta* and fails to address language in the declarations page that lists more than one UIM coverage and more than one UIM premium. Accordingly, we are unpersuaded by its analysis.

¶ 17 Last, General Casualty argues that the use of the word "separately" in the coverage information section of the declarations page, which states that "the coverages listed below apply separately for each vehicle and are provided only where a premium or included is

shown," precludes stacking of the three UIM coverage limits. We disagree. The word "separately" can have more than one connotation. "Separate" means "to set or keep apart"; "to make a distinction between"; or "to sort." Webster's Third New International Dictionary 2069 (1986). Although use of the term "separately" may signify recovery under only one of the coverages, it may also lead to the opposite conclusion; it may also indicate that the UIM coverage limit of $250,000 applies to each vehicle where a premium is shown. Regardless, the use of the word "separately" in the coverage information section does not address an insured's ability to combine UIM coverages for which the insured has paid a premium. As we noted in *Progressive Premier Insurance Co. v. Cannon*, 382 Ill. App. 3d 526 (2008), by listing each vehicle *separately* in the vehicle coverages section, an ambiguity arises in the policy in that an insured may reasonably presume separate UIM limits apply to each covered vehicle and that the limits could be stacked because separate UIM premiums were paid for each vehicle. See *id*. at 529-30. Nothing in the language of the coverage information section removes that ambiguity.

¶ 18                                      CONCLUSION

¶ 19        The judgment of the circuit court of Bureau County, allowing Marilyn to aggregate the underinsured motorist coverages in the General Casualty policy, is affirmed.

¶ 20        Affirmed.

¶ 21        JUSTICE WRIGHT, specially concurring.

¶ 22        I specially concur. I respectfully submit a factual ambiguity warrants the result reached by the majority in this case. Here, plaintiff was injured by an underinsured motorist while plaintiff was inside a convenience store rather than present in one of the multiple vehicles subject to her insurance policy. Due to the very unusual factual circumstances, I agree with the result.