NOTICE

Decision filed 11/19/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0266

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| KENNETH RANDALL JOHNSON, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Saline County. |
| | ) |
| and | ) |
| | ) |
| DALLAS DEAN HALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 99-L-49 |
| | ) |
| MARTHA L. DAVIS, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ADDISON INSURANCE COMPANY, | ) Honorable |
| | ) Bruce D. Stewart, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant Addison Insurance Company (Addison) appeals from a declaratory judgment of the circuit court of Saline County allowing the underinsured-motorists coverage provided by Addison to plaintiff Kenneth Randall Johnson (Johnson) to be stacked. The policy in question provided underinsured-motorists coverage on four vehicles with limits of $50,000 per person and $100,000 per accident. The circuit court found the insurance policy ambiguous and determined that the underinsured-motorists-coverage limit of liability of $50,000 per vehicle can be stacked, making a total of $200,000 in underinsured-motorists coverage available to Johnson. Because the underinsured-motorists coverage provided by

1

Addison to Johnson is all that is involved in the instant matter, plaintiff Dallas Dean Hale (Hale) and defendant Martha L. Davis (Davis) take no part in this appeal. The issue we are asked to address is whether the underinsured-motorists coverage on the four vehicles insured by Addison's policy may be stacked. We affirm.

BACKGROUND

On November 12, 1998, Johnson and Hale were riding in Johnson's 1995 Dodge van, when they were involved in an automobile accident with a vehicle driven by Davis. Johnson and Hale filed suit against Davis for injuries they sustained in the accident. Davis was insured, and her carrier settled the claim with Johnson for the policy limits of $50,000. At the time of the accident, Johnson was insured under a policy issued by Addison. The policy covered the 1995 Dodge van that Johnson was driving at the time of the accident and four additional vehicles–a 1996 Plymouth Neon, a 1991 GMC Sonoma, a 1977 Ford F-250, and a 1981 travel trailer. The policy charged five separate premiums. The first four vehicles under the policy carried underinsured-motorists coverage of $50,000 per person and $100,000 per accident. The travel trailer did not carry underinsured-motorists coverage.

The limits of liability are listed separately for each vehicle on the declarations page of the insurance policy, which encompasses the first three pages of the policy:

"Vehicle # 1

| | | | | RATING | | | | TOTAL PREMIUM $ | 201 |
|---|---|---|---|---|---|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE ID NO. | SYMBOL | CLASS | RATED DRIVER | USAGE | TERR | |
| 1996 | PLYMOU | NEON HIGHLI | 1P3ES42C7TD517047 | 13 | 885120 | OPR. AGE 50-64 | Pleasure | 34 | |
| | | | | | | LINDA JOHNSON | | | |

| COVERAGES: | LIABILITY (000S) | MED PAY (000S) | UM (000S) | UIM (000S) | PDUM (000S) | OTC (1) | COLLISION (1) | TOWING | PHE |
|---|---|---|---|---|---|---|---|---|---|
| LIMIT | 50/100BI 50PD | 5 | 50/100 | 50/100 | | | | 50 | |
| DEDUCTIBLE | | | | | | 50 | 500 | | |
| PREMIUM | 42 | 25 | 6 | 16 | INCL | 60 | 52 | 5 | |

| ADDITIONAL FORMS FOR THIS VEHICLE: | | PREMIUM | DISCOUNTS FOR THIS VEHICLE: | |
|---|---|---|---|---|
| PP0303 | 0486 TOWING AND LABOR COSTS COVERAGE | | PASS RESTRAIN 2 SIDE | $ -2 |
| PP0401 | 0486 SPLIT UNINSURED MOTORISTS LIMITS | | ANTI LOCK BRAKES | $ -3 |
| PP0402 | 0486 SPLIT UNDERINSURED MOTORISTS LIMITS | | | |

2

PP0447    0897  ILLINOIS-UNDERINSURED MOTORISTS

IL7032    0796  LOSS PAYABLE/LESSOR CLAUSE

CHRYSLER FINAN. CORP

PO BOX 207002

STOCKTON, CA  95267

**Vehicle # 2**

| | | | | **RATING** | | | | **TOTAL PREMIUM $  161** |
|---|---|---|---|---|---|---|---|---|
| **YEAR** | **MAKE** | **MODEL** | **VEHICLE ID NO.** | **SYMBOL** | **CLASS** | **RATED DRIVER** | **USAGE** | **TERR** |
| 1995 | DODGE | RAM VAN B25 | 2B7HB21Y7SK558104 | 06 | 885120 | OPR. AGE 50-64 | Pleasure | 34 |

| **COVERAGES:** | **LIABILITY (000S)** | | **MED PAY (000S)** | **UM (000S)** | **UIM (000S)** | **PDUM (000S)** | **OTC (1)** | **COLLISION (1)** | **TOWING** | **PHE** |
|---|---|---|---|---|---|---|---|---|---|---|
| LIMIT | 50/100BI 50PD | | 5 | 50/100 | 50/100 | | | | 50 | |
| DEDUCTIBLE | | | | | | | 50 | 500 | | |
| PREMIUM | 42 | 25 | 6 | | 16 | INCL | 34 | 37 | 5 | |

| **ADDITIONAL FORMS FOR THIS VEHICLE:** | **PREMIUM** | **DISCOUNTS FOR THIS VEHICLE:** |
|---|---|---|
| PP0303    0486  TOWING AND LABOR COSTS COVERAGE | | PASS RESTRAIN 1 SIDE $  -1 |
| PP0401    0486  SPLIT UNINSURED MOTORISTS LIMITS | | ANTI LOCK BRAKES      $  -3 |
| PP0402    0486  SPLIT UNDERINSURED MOTORISTS LIMITS | | |
| PP0447    0897  ILLINOIS-UNDERINSURED MOTORISTS | | |
| IL7032    0796  LOSS PAYABLE/LESSOR CLAUSE | | |

CHRYSLER CREDIT CORP

PO BOX 207002

STOCKTON, CA  95267

**Vehicle # 3**

| | | | | **RATING** | | | | **TOTAL PREMIUM $  157** |
|---|---|---|---|---|---|---|---|---|
| **YEAR** | **MAKE** | **MODEL** | **VEHICLE ID NO.** | **SYMBOL** | **CLASS** | **RATED DRIVER** | **USAGE** | **TERR** |
| 1991 | GMC | SONOMA | 1GTCS19Z9M2500778 | 07 | 885120 | OPR. AGE 50-64 | Pleasure | 34 |
| | | | | | | KENNETH JOHNSON | | |

| **COVERAGES:** | **LIABILITY (000S)** | | **MED PAY (000S)** | **UM (000S)** | **UIM (000S)** | **PDUM (000S)** | **OTC (1)** | **COLLISION (1)** | **TOWING** | **PHE** |
|---|---|---|---|---|---|---|---|---|---|---|
| LIMIT | 50/100BI 50PD | | 5 | 50/100 | 50/100 | | | | 50 | |
| DEDUCTIBLE | | | | | | | 50 | 500 | | |
| PREMIUM | 42 | 25 | 6 | | 16 | INCL | 31 | 32 | 5 | |

| **ADDITIONAL FORMS FOR THIS VEHICLE:** | **PREMIUM** |
|---|---|
| PP0303    0486  TOWING AND LABOR COSTS COVERAGE | |
| PP0401    0486  SPLIT UNINSURED MOTORISTS LIMITS | |
| PP0402    0486  SPLIT UNDERINSURED MOTORISTS LIMITS | |
| PP0447    0897  ILLINOIS-UNDERINSURED MOTORISTS | |

**Vehicle # 4**

| | | | | RATING | | | | TOTAL PREMIUM $ 87 |
|---|---|---|---|---|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE ID NO. | SYMBOL | CLASS | RATED DRIVER | USAGE | TERR |
| 1977 | FORD | F250 | F25SCZ81449 | 07 | 885920 | OPR. AGE 50-64 | Farm | 34 |

| COVERAGES: | LIABILITY (000S) | MED PAY (000S) | UM (000S) | UIM (000S) | PDUM (000S) | OTC (1) | COLLISION (1) | TOWING | PHE |
|---|---|---|---|---|---|---|---|---|---|
| LIMIT | 50/100BI 50PD | 5 | 50/100 | 50/100 | 15 | | | | |
| DEDUCTIBLE | | | | | 250 | | | | |
| PREMIUM | 35 | 21 | 5 | 16 | INCL | 10 | | | |

| ADDITIONAL FORMS FOR THIS VEHICLE: | | PREMIUM |
|---|---|---|
| PP0401 | 0486 SPLIT UNINSURED MOTORISTS LIMITS | |
| PP0402 | 0486 SPLIT UNDERINSURED MOTORISTS LIMITS | |
| PP0447 | 0897 ILLINOIS-UNDERINSURED MOTORISTS | |
| PP0486 | 0694 ILLINOIS-PROPERTY DAMAGE UM | |

**Vehicle # 5**

| | | | | RATING | | | | TOTAL PREMIUM $ 0 |
|---|---|---|---|---|---|---|---|---|
| YEAR | MAKE | MODEL | VEHICLE ID NO. | SYMBOL | CLASS | RATED DRIVER | USAGE | TERR |
| 1981 | BUCANE | 32' TRAVEL | 1M7BRO2R1B132064 | 11 | 944200 | CAMPER TRAILER | Pleasure | 34 |

| COVERAGES: | LIABILITY (000S) | MED PAY (000S) | UM (000S) | UIM (000S) | PDUM (000S) | OTC (1) | COLLISION (1) | TOWING | PHE |
|---|---|---|---|---|---|---|---|---|---|
| LIMIT | | | | | | | | | |
| DEDUCTIBLE | | | | | | 50 | 500 | | |
| PREMIUM" | | | | | | | | | |

After the declarations page, the policy contains a "Definitions" section.  The policy is then divided into various sections, including liability coverage, medical-payments coverage, uninsured-motorists coverage, coverage for damage to autos, duties after an accident or loss, and general provisions.  The general-provisions portion of the policy contains the following paragraph concerning coverage by two or more policies:

"TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy."

The policy also contains an underinsured-motorists endorsement, which states, "[T]he provisions of the policy apply unless modified by the endorsement."

The underinsured-motorists endorsement directs the reader to "SEE DECLARATION

4

FOR LIMIT OF LIABILITY AND PREMIUM."   The endorsement further provides in pertinent part:

"INSURING AGREEMENT

A. We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury:'

1. Sustained by an 'insured;' and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance[,] or use of the 'underinsured motor vehicle.'

We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements ***."

The limit-of-liability clause contained in the underinsured-motorists endorsement states as follows:

"A. The limit of liability shown in the Schedule or in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident.  This is the most we will pay regardless of the number of:

1. 'Insureds';

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident."

A dispute arose between the parties regarding the amount of underinsured-motorists coverage available to Johnson under the policy.

Johnson filed an amended motion for a declaratory summary judgment in which he

sought a declaration that the insurance policy issued to him by Addison provides underinsured-motorists coverage in the sum of $200,000. Addison filed a response in which it argued that there was no underinsured-motorists coverage available to Johnson due to the antistacking language in the policy and Davis's carrier's previous payment of $50,000. On May 5, 2006, the circuit court entered an order in which it found that the insurance policy issued by Addison to Johnson was ambiguous and determined that the underinsured-motorists-coverage limit of liability of $50,000 per vehicle could be stacked, thereby providing Johnson with $200,000 of underinsured-motorists coverage. Addison filed a timely notice of appeal.

ANALYSIS

The issue in the instant case is whether the underinsured-motorists coverage on the four vehicles insured by Addison's insurance policy may be stacked. Addison contends that the limit of liability for underinsured-motorists coverage under the policy in issue is $50,000 per person and $100,000 per accident and that the coverages may not be stacked because the limit-of-liability clause contained in the policy is an unambiguous antistacking provision that must be enforced. Addison further contends that since the $50,000 policy limits have been paid by the tortfeasor's carrier, the $50,000 of underinsured-motorists coverage afforded by the policy in issue is not available as a matter of law. Addison insists that the circuit court's order should be reversed and a judgment should be entered in favor of Addison. We disagree.

This appeal was taken from the circuit court's grant of a summary judgment in favor of Johnson and against Addison. In an appeal from the grant of a summary judgment, we conduct a *de novo* review. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390, 620 N.E.2d 1073, 1077 (1993). The construction of an insurance policy is a question of law (*American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479-80, 687

6

N.E.2d 72, 75 (1997)) and is an appropriate subject for disposition by way of a summary judgment. *Crum & Forster Managers Corp.*, 156 Ill. 2d at 390-91, 620 N.E.2d at 1077.

When a court construes an insurance policy, the agreement is to be enforced as written so long as it is unambiguous and only to the extent that it does not contravene public policy. *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 401 N.E.2d 539 (1980). In general, antistacking clauses do not contravene public policy. *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 229, 659 N.E.2d 952, 959 (1995). The Illinois Insurance Code expressly authorizes the use of antistacking provisions in motor vehicle insurance policies. 215 ILCS 5/143a-2(5) (West 2002). However, if any provision of the policy is ambiguous, that ambiguity must be construed in favor of the insured. *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 180, 370 N.E.2d 1044, 1049 (1977).

In determining whether an ambiguity exists, all the provisions in an insurance contract should be read together and not in isolation. *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330, 336, 312 N.E.2d 247, 250 (1974); *Chester v. State Farm Mutual Automobile Insurance Co.*, 227 Ill. App. 3d 320, 325, 591 N.E.2d 488, 492 (1992). Policy provisions are deemed ambiguous if they are subject to more than one reasonable interpretation. *State Farm Mutual Automobile Insurance Co. v. Reinhardt*, 253 Ill. App. 3d 823, 824, 625 N.E.2d 842, 843 (1993). Reasonableness is the key, and the touchstone is whether the provision is subject to more than one reasonable interpretation, not whether creative possibilities can be suggested. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193, 620 N.E.2d 355, 362 (1993).

In *Bruder*, the Illinois Supreme Court considered whether a plaintiff should be allowed to stack underinsured-motorists coverage on two vehicles set forth on a single business automobile policy. *Bruder* held that when the antistacking clause was read in conjunction with the declarations page, no ambiguity arose because the limit of the

underinsured-motorists coverage was set forth only one time on the declarations page, instead of two times. The *Bruder* court discussed what would happen if the underinsured-motorists coverage was set forth two times on the declarations page, once adjacent to each insured vehicle, stating:

"It *would not be difficult to find an ambiguity* created by such a listing of the bodily injury liability limit for each person insured.  \*\*\*  There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. *It would be more reasonable to assume that the parties intended that, in return for the two premiums, two \*\*\* coverage amounts were afforded.*" (Emphasis added.) *Bruder*, 156 Ill. 2d at 192, 620 N.E.2d at 362.

Other courts have followed this rationale.

For example, *Pekin Insurance Co. v. Estate of Goben*, 303 Ill. App. 3d 639, 707 N.E.2d 1259 (1999), adopted the reasoning in *Bruder* and held that the antistacking clause in issue was ambiguous because the declarations page to which the clause referred listed two vehicles with separate coverages and separate premiums. The two underinsured-motorists coverages in the amount of $500,000 were allowed to be stacked, making $1 million in underinsured-motorists coverage available. Likewise, *Allen v. Transamerica Insurance Co.*, 128 F.3d 462 (7th Cir. 1997), relied upon by the *Estate of Goben* court, held that the antistacking clause there in issue was ambiguous because the declarations page to which the clause referred listed two vehicles with separate coverages and separate premiums listed for each vehicle. *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797, 724 N.E.2d 1042 (2000), decided by this court, also permitted stacking.

In *Yates*, the policy covered two vehicles and contained antistacking language similar to the instant case in that the underinsured-motorists coverage was said to be limited to the

8

liability shown in the declarations page. The declarations page identified two vehicles that were covered. In the row corresponding to underinsured-motorists coverage, the policy limits were listed under "auto one" and "auto two," and a premium was listed for each vehicle. The declarations page also contained a statement that provided, " 'COVERAGE IS PROVIDED WHERE A PREMIUM AND A LIMIT OF LIABILITY OR THE WORD "INCLUDED" ARE SHOWN FOR COVERAGE.' " *Yates*, 311 Ill. App. 3d at 800, 724 N.E.2d at 1045. *Yates* held that the declarations page was inconsistent with and contradictory to the antistacking provision. Therefore, the policy was construed in favor of the insured and the underinsured-motorists coverage was stacked. *Yates*, 311 Ill. App. 3d at 800, 724 N.E.2d at 1045.

Here, Addison promises that it "will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury.' " Under this language, Addison agrees to pay all the damages that Johnson is entitled to recover. However, this language cannot be read in isolation. The underinsured-motorists endorsement also contains a limit-of-liability section, which directs the reader to either the schedule or the declarations page. The schedule is blank, but the declarations page actually comprises three pages. These pages list five vehicles, only four of which have underinsured-motorists coverage. Underinsured-motorists coverage in the sum of $50,000 appears four separate times, once for each of the four vehicles carrying underinsured-motorists coverage.

The declarations pages here and in *Yates* are arranged similarly in that each lists the limit of liability more than once. The distinction between listing the limits of liability once and listing them more than once was crucial to our supreme court's determination in *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 823 N.E.2d 561 (2005). In *Hobbs*, the Hartford policy in question listed the limits of underinsured-motorists coverage only once

9

on the declarations page. *Hobbs* noted the apparent similarities between the Hartford insurance policy and the policy in *Bruder*. *Hobbs*, 214 Ill. 2d at 21, 823 N.E.2d at 566. The antistacking provision in the Hartford policy tied the limit of underinsured-motorists coverage to the limit shown on the declarations page. The declarations page listed the premiums for the two vehicles separately but listed the relevant limit of liability only once. The supreme court read the antistacking provision in conjunction with the declarations page and determined that the policy was unambiguous and that the coverages did not stack. *Hobbs*, 214 Ill. 2d at 21, 823 N.E.2d at 566. *Hobbs* did not overrule *Bruder* but, rather, used the *Bruder* analysis in determining that coverage did not stack.

We are mindful that there is no *per se* rule that listing the numerical limits more than once on the declarations page creates an ambiguity which results in allowing the policies to be stacked. See *Hobbs*, 214 Ill. 2d at 26 n.1, 823 N.E.2d at 569 n.1. *Hobbs* stated: "The declarations page of an insurance policy is but one piece of the insuring agreement. [Citation.] Although it contains important information specific to the policyholder, the declarations page cannot address every conceivable coverage issue." *Hobbs*, 214 Ill. 2d at 23, 823 N.E.2d at 567. Nevertheless, after applying the case-by-case review advocated by our supreme court (*Hobbs*, 214 Ill. 2d at 26 n.1, 823 N.E.2d at 569 n.1), the policy language in the instant case proves to be ambiguous.

As previously stated, the Addison policy here in question and the policy in *Yates* are similar. In contrast to *Bruder* and *Hobbs*, the policy in *Yates* lists the underinsured-motorists coverage limits twice, once for each of the two covered vehicles. See *Hobbs*, 214 Ill. 2d at 25, 823 N.E.2d at 568-69. Here, the limits of underinsured-motorists coverage are listed four separate times, once for each vehicle covered. Four separate premiums for underinsured-motorists coverage also appear on the declarations page. Such a factual distinction is material to a determination regarding whether there is an ambiguity in an insurance policy.

10

*Hobbs*, 214 Ill. 2d at 25, 823 N.E.2d at 568. This is not a case in which one has to be creative to find an ambiguity. After reading the policy, a reasonable person could believe that the policy provides $50,000 of underinsured-motorists coverage for each of the four vehicles carrying underinsured-motorists coverage, for a total of $200,000 in underinsured-motorists coverage.

The underinsured-motorists endorsement states, "[T]he provisions of the policy apply unless modified by the endorsement." The antistacking clause found under the "General Provisions" section of the policy, therefore, does not even come into play, because the underinsured-motorists endorsement directs the reader to "SEE DECLARATION FOR LIMIT OF LIABILITY AND PREMIUM." Even assuming the antistacking clause is applicable, the Addison policy contains inconsistent provisions, which we are to construe in favor of the insured.

The Addison policy contains a general antistacking provision. However, the limit-of-liability clause contained in the underinsured-motorists endorsement states that the limit of liability shown in the declarations page is the maximum limit of liability. The declarations page shows limits of $50,000 per person, and those limits are listed four separate times and show that four separate premiums were charged. Relying on *Bruder*, *Allen*, *Estate of Goben*, and *Yates*, we find that the antistacking clauses contained in the Addison policy create an ambiguity. Accordingly, we find that the circuit court's decision granting Johnson $200,000 in underinsured-motorists coverage, a figure arrived at by aggregating the $50,000 limit for underinsured-motorists coverage on each of the four vehicles carrying that coverage in Johnson's insurance policy, was correct.

CONCLUSION

For the foregoing reasons, we affirm the circuit court's grant of a summary judgment in favor of Johnson.

11

Affirmed.

WELCH, P.J., and CHAPMAN, J., concur.

NO. 5-06-0266

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| KENNETH RANDALL JOHNSON, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiff-Appellee, | ) Saline County. |
| | ) |
| and | ) |
| | ) |
| DALLAS DEAN HALE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 99-L-49 |
| | ) |
| MARTHA L. DAVIS, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ADDISON INSURANCE COMPANY, | ) Honorable |
| | ) Bruce D. Stewart, |
| Defendant-Appellant. | ) Judge, presiding. |

**Opinion Filed**: November 19, 2007

**Justices**: Honorable Richard P. Goldenhersh, J.

Honorable Thomas M. Welch, P.J., and
Honorable Melissa A. Chapman, J.,
Concur

**Attorney for Appellant**
Shane M. Carnine, Campbell, Black, Carnine, Hedin, Ballard & McDonald, P.C., P.O. Drawer C, Mt. Vernon, IL 62864

**Attorney for Appellee**
Robert H. Howerton, Howerton, Dorris & Stone, 300 West Main, Marion, IL 62959