Rule 23 order filed
January 17, 2018;
Motion to publish granted
February 22, 2018.

2018 IL App (5th) 140621

NO. 5-14-0621

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| GEORGIE BUSCH, Individually and as | ) | Appeal from the |
| Special Administrator of the Estate of | ) | Circuit Court of |
| Amber Wood, Deceased, | ) | Madison County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 14-MR-100 |
| | ) | |
| COUNTRY FINANCIAL INSURANCE | ) | |
| COMPANY, | ) | Honorable |
| | ) | Donald M. Flack, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justice Cates concurred in the judgment and opinion.
Justice Goldenhersh dissented, with opinion.

**OPINION**

¶ 1     This appeal is taken from the Madison County circuit court's order granting summary

judgment in favor of the plaintiff, Georgie Busch, and against the defendant, Country Financial

Insurance Company (Country Mutual).[1] The circuit court found that the antistacking provisions

in Country Mutual's insurance policies were ambiguous and should be construed against Country

Mutual. On April 13, 2017, this court issued a decision in this cause, which affirmed the order of

the circuit court. On May 5, 2017, Country Mutual filed a petition for rehearing, which this court

_____

[1]The circuit court entered an order on May 30, 2014, correcting the misnomer of Country
Financial and ordering that the defendant shall be designated as Country Mutual in all subsequent
pleadings.

1

granted on May 26, 2017. After full briefing on the petition for rehearing pursuant to Illinois Supreme Court Rule 367 (eff. Aug. 15, 2016), we reverse and remand with directions that a summary judgment be entered in favor of Country Mutual.

¶ 2                                    FACTS

¶ 3     The following facts are not in dispute. The plaintiff is the mother of Amber Wood. On April 27, 2012, at approximately 1:49 a.m., 23-year-old Amber was killed by a speeding hit-and-run driver as she attempted to cross South Broadway in St. Louis, Missouri. At the time of the accident, the plaintiff and Amber were insured under the following two insurance policies issued by Country Mutual:

> "a.   Policy no. A12A8077880
>
>        Uninsured limits: $100,000
>
>        Named insureds: Georgie Busch and Amber Wood
>
>        Insured vehicle: 2001 Ford Focus (primary driver Amber Wood)
>
> b.   Policy no. A12A3258332
>
>        Uninsured limits: $250,000
>
>        Named insured: Georgie Busch
>
>        Insured vehicle: 2003 Infiniti (primary driver Georgie Busch)"

¶ 4     Following Amber's accident, the plaintiff, individually and as special administrator of the estate of Amber Wood, deceased, sought uninsured motorist coverage pursuant to the two policies. The parties stipulated there was no question of liability and that the total amount of damages for wrongful death met or exceeded $350,000, which is the total combined uninsured limits of the two policies. On or about July 24, 2014, Country Mutual paid the $250,000 uninsured limits under the policy listing the plaintiff as the sole named insured. The parties do

2

not dispute that Country Mutual has no further obligation to the plaintiff concerning the uninsured motorist benefits under this policy. However, Country Mutual denied the plaintiff, as the special administrator of Amber's estate, coverage under the policy listing the plaintiff and Amber as the named insureds with uninsured motorist limits of $100,000.

¶ 5    The parties subsequently filed cross-motions for summary judgment. Country Mutual asserted that the $250,000 it had already paid the plaintiff was the maximum amount it was obligated to pay in relation to Amber's accident under both policies, pursuant to the antistacking provisions in each policy. The plaintiff argued she was entitled to $100,000 as the special administrator of Amber's estate in addition to the $250,000 she had received individually under her own policy since Amber paid a separate premium on a separate policy and it was stipulated that the total amount of damages met or exceeded $350,000.

¶ 6    On November 20, 2014, after briefing by the parties on their cross-motions for summary judgment, the circuit court granted the plaintiff's motion and denied Country Mutual's motion after finding an ambiguity in the provisions of Country Mutual's policies. The court determined this ambiguity must be resolved in favor of the plaintiff, and its order provided that the plaintiff was entitled to $100,000 under the subject policy in addition to the $250,000 the plaintiff had received under her individual policy. On December 19, 2014, Country Mutual timely filed its notice of appeal.

¶ 7    On April 13, 2017, this court issued a decision in this cause, which affirmed the order of the circuit court. On May 5, 2017, Country Mutual filed a petition for rehearing, which this court granted on May 26, 2017.

3

¶ 8                                          ANALYSIS

¶ 9     Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). When parties file cross-motions for summary judgment, they agree that only a question of law is involved and the court should decide the issue based on the record. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 309 (2010). We apply *de novo* review to both the court's summary judgment ruling and to the extent we construct the terms of the insurance policies. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010).

¶ 10    In construing the language of an insurance policy, our primary objective is "to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." *Central Illinois Light Co. v. Home Insurance Co.*, 213 Ill. 2d 141, 153 (2004). We construe the policy as a whole, giving effect to every provision. *Id.* Where the words used in the policy are clear and unambiguous, we afford them their plain, ordinary, and popular meaning. *Id.* Ambiguous policy terms that limit an insurer's liability will be liberally construed in favor of coverage. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). Ambiguity exists in an insurance contract if the language is subject to more than one reasonable interpretation, but we will not strain to find an ambiguity where none exists. *Id.*

¶ 11    Here, the plaintiff and Amber purchased two insurance policies from Country Mutual. The first policy, policy No. A12A8077880, lists the plaintiff and Amber as the named insureds and includes uninsured motorist limits of $100,000. The second policy, policy No. A12A3258332, lists only the plaintiff as the named insured and includes uninsured motorist limits of $250,000. Each policy contains, in relevant part, the following language:

4

"General Policy Conditions

8. Other Vehicle Insurance with Us. If this policy and any other vehicle insurance policy issued to *you* or a *relative* by one of *our* companies apply to the same accident, the maximum limit of *our* liability under all the policies will not exceed the highest applicable limit of liability under any one policy." (Emphases in original.)

¶ 12    Our supreme court has held that an antistacking provision nearly identical to the one at issue was unambiguous and did not violate public policy. *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216 (1995). The policy at issue unambiguously states that the General Policy Conditions are applicable to uninsured/underinsured motorist coverage. Nevertheless, the circuit court refused to apply the provision because it found that it conflicted with paragraph 4 of the conditions stated in the uninsured/underinsured coverage section of the policy, thus creating an ambiguity to be construed against Country Mutual. Paragraph 4 states as follows:

"4. Other Insurance. If there is other applicable uninsured-underinsured motorists insurance that covers a loss, we will pay our proportionate share of that loss. Our share is the proportion our limits of liability bear to the total of all applicable limits. However, in the case of motor vehicles you do not own, this policy will be excess and will apply only in the amount our limit of liability exceeds the sum of the applicable limits of liability of all other applicable insurance. We will pay only after all other applicable liability limits have been paid."

¶ 13    The circuit court found that because this "Other Insurance" provision does not clearly limit itself to insurance issued by other companies, an ambiguity exists as to which provision to apply in the case at bar. We disagree and adopt the reasoning of our colleagues in the Second District in *American Family Mutual Insurance Co. v. Martin*, 312 Ill. App. 3d 829, 833 (2000).

5

Reading both provisions together, we find that it is clear that the "Other Vehicle Insurance with Us" provision applies where two or more vehicles belonging to the same insured are covered by policies issued by Country Mutual, and the "Other Insurance" provision refers only to a situation where a different policy issued by a different company applies. See *id.* If the "Other Insurance" provision were intended to refer to other policies issued by Country Mutual, there would be no need to refer to a proportionate share; Country Mutual's proportionate share of liability would always be 100%. See *id.* "Moreover, reading the ['O]ther [I]nsurance['] clause in this fashion would render the antistacking provision meaningless." *Id.* Accordingly, we find that each clause applies to a different situation, and the antistacking clause is simply not ambiguous.

¶ 14    Our supreme court's decision in *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179 (1993), provides further support for our decision. While in *Bruder* the antistacking provision was applied to prevent stacking uninsured motorist coverage on two vehicles set forth on a single automobile policy (*id.* at 189-94), we find this to be a distinction without a difference. Although the two vehicles were covered under the same policy, two separate premiums were paid, as in the case at bar. *Id.* at 191. With regard to the "premium rule," the Illinois Supreme Court held that antistacking provisions do not *per se* violate this rule, whether it be for coverage afforded under separate vehicles under one policy or separate policies. *Id.* at 184. Instead, *Bruder* affirmed that it is the law in Illinois that an insurer is entitled to the enforcement of unambiguous antistacking provisions to the extent that such provisions represent terms to which the parties have agreed to be bound. *Id.* at 185-86. As explained above, we find these conditions are met in the case at bar. For these reasons, the circuit court erred in granting a summary judgment in favor of the plaintiff and in denying Country Mutual's motion for a summary judgment.

6

¶ 15                                      CONCLUSION

¶ 16    For the foregoing reasons, we reverse the circuit court's summary judgment in favor of the plaintiff and remand with directions that a summary judgment be entered in favor of Country Mutual.

¶ 17    Reversed and remanded with directions.


¶ 18    JUSTICE GOLDENHERSH, dissenting:

¶ 19    I respectfully dissent from the majority opinion and would affirm the trial court's order granting summary judgment in favor of plaintiff and against Country Mutual. After careful review of the insurance policies at issue, I find there is a conflict creating an ambiguity when the "Other Insurance" clause is compared to the "Other Vehicle Insurance with Us" clause. While the "Other Vehicle Insurance with Us" clause attempts to limit Country Mutual's liability to the highest limit of a single policy, the "Other Insurance" clause directly states that Country Mutual will pay its proportionate share of a loss if there is applicable uninsured motorist insurance covering that loss.

¶ 20    Provisions of an insurance contract must be read together and not in isolation. *Johnson v. Davis*, 377 Ill. App. 3d 602, 607 (2007). I reiterate the majority that where such a provision is ambiguous, it will be construed liberally in favor of coverage. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010). As the majority further notes, policy provisions are considered ambiguous if they are subject to more than one reasonable interpretation. *Johnson*, 377 Ill. App. 3d at 607. Moreover, a policy provision purporting to exclude or limit coverage is to be read narrowly and applies only where its terms are clear, definite, and specific. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 393 (2005).

7

¶ 21 In the instant case, Country Mutual issued two separate policies to plaintiff and Amber. One policy lists only plaintiff as the named insured, while the other policy lists plaintiff and Amber as the named insureds. Importantly, it has been stipulated that the damages of plaintiff and Amber's estate exceed all applicable policy limits.

¶ 22 After careful review, I do not find this is a case where one must be creative to find an ambiguity. While both policies contain antistacking language in their respective "Other Vehicle Insurance with Us" clauses, each policy also contains an "Other Insurance" clause. My plain reading of the "Other Insurance" clause indicates that Country Mutual has contemplated situations where more than one of its insurance policies may apply to a single occurrence. Specifically, the "Other Insurance" clause provides that Country Mutual will pay its proportionate share of a loss where there is other applicable uninsured-underinsured motorist insurance covering that loss.

¶ 23 Even assuming the antistacking clause is applicable, Country Mutual's policies contain inconsistent provisions, which should be construed in favor of the insured. Accordingly, given that the damages of plaintiff and Amber's estate exceed all applicable policy limits and that multiple Country Mutual policies may apply to a single occurrence, I would find plaintiff is entitled to the policy limits at issue as the administrator of Amber's estate.

¶ 24 Further, I find it relevant to note that plaintiff is not seeking additional uninsured motorist coverage in her individual capacity, but as the special administrator of Amber's estate on a separate policy which lists Amber as a named insured. Here, Country Mutual sold two separate insurance policies to plaintiff and Amber, as evidenced by the two separate declaration sheets containing differing limits of uninsured motorist coverage, differently assigned policy numbers, and different premium amounts.

8

¶ 25    With this in mind, I find plaintiff is merely seeking coverage for the "each person" limit under section 2 of the policies. The $250,000 that plaintiff claimed in her individual capacity under her individual policy should not prevent Amber's estate from claiming the $100,000 policy limits under the separate policy listing Amber as a named insured. It is of no consequence that plaintiff is the individual making the $100,000 claim under Amber's policy, as plaintiff is making the claim as the special administrator of Amber's estate rather than in her individual capacity.

¶ 26    The majority cites our supreme court's decision in *Bruder* in support of its decision. In *Bruder*, our supreme court considered whether a plaintiff should be allowed to stack uninsured motorist coverage on two vehicles set forth on a single automobile policy issued by Country Mutual. *Bruder* held there was no ambiguity when the antistacking clause was read in conjunction with the declarations page because the limit of the uninsured motorist coverage was set forth only one time on the declarations page instead of two times. However, the *Bruder* court further discussed what would happen if the uninsured motorist coverage was set forth two times on the declarations page, one adjacent to each insured vehicle, stating:

> "It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. *** There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two *** coverage amounts were afforded." *Bruder*, 156 Ill. 2d at 192.

¶ 27    In contrast to *Bruder*, the two policies in the instant case set forth separate uninsured motorist coverage limits, once for plaintiff's individual policy and once for the policy issued to

9

plaintiff and Amber. Unlike *Bruder* where the single policy was covered by a single declaration page, here there are two separate policies with two separate declarations sheets containing different policy numbers and different premium amounts. This is not a case that involves the stacking of liability limits under a single policy. Plaintiff, acting in the capacity of the special administrator to Amber's estate, is seeking the benefit of what was purchased under the policy issued to plaintiff and Amber, to which Amber paid a premium.

¶ 28    Since *Bruder* was decided, Country Mutual has changed its clause to include policies held by "relatives." It is clear that Amber fits the policy definition of "relative." However, after careful review of the policy language, I find this antistacking clause only prevents Amber's estate from making a duplicate claim under plaintiff's individual policy from which plaintiff has received $250,000. Considering it is stipulated that the damages meet or exceed $350,000, I find no reason why the antistacking clause would prevent Amber's estate from making a claim against Amber's separate policy for $100,000. Country Mutual's payment of $250,000 to plaintiff under plaintiff's individual policy should not prevent Amber's estate from making a separate claim for $100,000 under Amber's separate policy to which Amber paid a separate premium. As the trial court noted, to do so would permit Country Mutual to collect premiums for multiple policies from multiple related household members but be liable only under the single largest policy, resulting in a windfall for Country Mutual and an unjust result for its insureds.

¶ 29    Finally, I find no reason to focus on the "Other Vehicle Insurance with Us" clause contained outside the uninsured motorist section of the policy and ignore the "Other Insurance" clause expressly contained within the uninsured motorist section. It is a well-settled principle of contract construction that when a contract contains both general and specific provisions

10

concerning the same subject, the specific provision controls. *Skidmore v. Throgmorton*, 323 Ill. App. 3d 417, 426 (2001).

¶ 30    Here, the "Other Insurance" provision is specifically provided under section 2 concerning uninsured motorist coverage, whereas the "Other Vehicle Insurance with Us" provision is stated under the "General Policy Conditions" portion of the policies. While section 2 makes reference to the general policy conditions, the antistacking clause lending support to Country Mutual's position is expressly stated outside the uninsured motorist section of the policy. Therefore, since both provisions concern uninsured motorist coverage, I would find the specific provision "Other Insurance" controls over the general provision "Other Vehicle Insurance with Us." As I previously noted, the "Other Insurance" clause directly states that Country Mutual will pay its proportionate share of a loss if there is applicable uninsured motorist insurance covering that loss. Accordingly, I believe plaintiff is entitled to the coverage limits at issue on behalf of Amber's estate.

¶ 31    I would find plaintiff is entitled to receive the uninsured policy limits at issue as the administrator of Amber's estate pursuant to the plain language of the "Other Insurance" clause in section 2 of the policies. When the "Other Insurance" clause and the "Other Vehicle Insurance with Us" clause are read together, the latter, on which Country Mutual relies to deny coverage, creates an ambiguity, which should be resolved in favor of the insured. Here, Amber paid a premium on a policy that covers the loss at issue, namely uninsured motorist insurance. Accordingly, I would find Amber's estate is entitled to receive the uninsured limits of $100,000 under the policy that lists Amber as a named insured. For these reasons, I would affirm.

11

2018 IL App (5th) 140621

NO. 5-14-0621

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| GEORGIE BUSCH, Individually and as Special Administrator of the Estate of Amber Wood, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Madison County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 14-MR-100 |
| COUNTRY FINANCIAL INSURANCE COMPANY, | ) ) ) ) | Honorable Donald M. Flack, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

**Rule 23 Order Filed:** January 17, 2018
**Motion to Publish Granted:** February 22, 2018
**Opinion Filed:** February 22, 2018

_____

**Justices:** Honorable James R. Moore, J.

Honorable Judy L. Cates, J.,
Concurs
Honorable Richard P. Goldenhersh, J.,
Dissents

_____

**Attorneys for Appellant**   Keith G. Carlson, Carlson Law Offices, Two North LaSalle Street, Suite 1800, Chicago, IL 60602; David T. Butsch, Butsch, Roberts & Associates, LLC, 231 S. Bemiston, Suite 260, Clayton, MO 63105

_____

**Attorney for Appellee**   Lanny Darr, Schrempf, Kelly, Napp & Darr, Ltd., 307 Henry Street, Suite 415, P.O. Box 725, Alton, IL 62002

_____