NOTICE

Decision filed 11/29/18. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2018 IL App (5th) 170484

NO. 5-17-0484

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| BENNIE BARLOW, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Franklin County. |
| | ) | |
| v. | ) | No. 16-MR-180 |
| | ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE | ) | |
| COMPANY, | ) | Honorable |
| | ) | Eric J. Dirnbeck, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the judgment of the court, with opinion.
Justices Welch and Cates concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff, Bennie Barlow, filed an underinsured motorist claim against defendant, State Farm Mutual Automobile Insurance Company (State Farm), after he was injured in an accident while driving one of his employer's 16 vehicles. All 16 vehicles were insured by State Farm. Plaintiff settled with the insurer of the at-fault driver for policy limits of $20,000. Plaintiff then sent timely notice to State Farm of an underinsured motorist claim. Plaintiff claimed the limits of liability for underinsured motorist coverage on all of his employer's 16 policies should be stacked, making $4 million of underinsured motorist coverage available. State Farm claimed there was only $250,000 in underinsured motorist coverage available. The parties filed cross-motions for summary judgment on the stacking issue. The trial court granted plaintiff's

1

motion for summary judgment. State Farm now appeals. We affirm.

¶ 2                                    I. BACKGROUND

¶ 3     On October 17, 2014, plaintiff was driving a pickup truck owned by his employer, Enviro-Tech, when he was rear-ended by a vehicle driven by the at-fault driver, Sebastian Dionne. Plaintiff was acting within the scope of his employment at the time of the accident. The Enviro-Tech truck plaintiff was driving was insured with an automobile policy issued by State Farm. Dionne was covered by a policy of insurance issued by Safe Auto with policy limits of $20,000. Safe Auto paid its policy limit of $20,000. Plaintiff's injuries are well in excess of $20,000.

¶ 4     Plaintiff made an underinsured motorist claim against State Farm. State Farm initially denied coverage because plaintiff was also covered under a worker's compensation insurance policy. State Farm's underinsured motorist coverage specifically provides that any worker's compensation payments "shall reduce the amount payable under this coverage." State Farm argued that the amount of plaintiff's worker's compensation claim exceeded the $250,000 underinsured motorist policy limit. Plaintiff's attorney acknowledged that State Farm was entitled to a setoff for monies paid by worker's compensation insurance, but continued to proceed with an underinsured claim against State Farm.

¶ 5     State Farm insured 16 vehicles owned by Enviro-Tech. The declaration pages begin as follows:

"A- LIABILITY

     BODILY INJURY 250000 EACH PERSON 500000 EACH ACCIDENT
     PROPERTY DAMAGE 200000 EACH ACCIDENT

 U- UNINSURED MOTOR VEHICLE

     BODILY INJURY 250000 EACH PERSON 500000 EACH ACCIDENT

2

POLICY CHANGE BALANCING ACCOUNT $0.00

W-  UNDERINSURED MOTOR VEHICLE

BODILY INJURY <u>250000</u> EACH PERSON <u>500000</u> EACH ACCIDENT
INFORMATION ONLY—DO NOT PAY"

The only other information on that page is a name, address, dates, and some type of identification of the policy form.

¶ 6     The declarations page identified the premium billed for underinsured motorist coverage on the vehicle involved in the accident as "W $58.95." The policy "provides Underinsured Motor Vehicle Coverage for **bodily injury** if 'W' is shown under 'SYMBOLS' on the Declaration Page." "W" is repeated 16 times in the declarations page, once for each vehicle covered by the policy. Enviro-Tech paid 16 separate premiums for underinsured motorist coverage.

¶ 7     The body of the policy contains the following language:

"**Limits**

1. The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under 'Underinsured Motor Vehicle Coverage—Bodily Injury Limits—Each Person, Each Accident'.
   a. The most **we** will pay for all damages resulting from **bodily injury** is the lesser of:
      (1) the limit shown under 'Each Person' less those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the **underinsured motor vehicle**; or
      (2) the total amount of all damages resulting from the **bodily injury** less those amounts actually recovered under the applicable bodily injury insurance policies, bonds, or other security maintained on the **underinsured motor vehicle**.
      \*\*\*
3. These Underinsured Motor Vehicle Coverage limits are the most **we** will pay regardless of the number of:

   a. **insureds**;

   b. claims made;

   c. vehicles insured; or

   d. vehicles involved in the accident."

3

¶ 8    The parties filed cross-motions for summary judgment on the issue of stacking. Plaintiff argued that the policy is ambiguous as to the limits of underinsured motorist coverage and that he should be allowed to stack the underinsured motorist coverage for all 16 vehicles for an aggregate of $4 million. State Farm argued that the policy contains unambiguous antistacking language and that the fact that premiums were listed separately for each vehicle does not render the policy ambiguous. The trial court agreed with plaintiff that the policy was ambiguous and allowed underinsured motorist coverage to be stacked. State Farm now appeals.

¶ 9                                    II. ANALYSIS

¶ 10   The issue on appeal is whether underinsured motorist coverage under the policy in question can be stacked. State Farm contends that the policy contains a clear, unambiguous antistacking provision and that even though the declarations page repeats the limits of liability, that does not mean the policy is ambiguous. We disagree.

¶ 11   Summary judgments are subject to *de novo* review. *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993). The construction of an insurance policy presents a question of law and is appropriate for disposition via summary judgment. *Johnson v. Davis*, 377 Ill. App. 3d 606, 606 (2007). Insurance policies are subject to the same rules that govern the interpretation of contracts. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005).

¶ 12   Where the terms of a policy are clear and unambiguous, the language will be given its plain and ordinary meaning; however, if a provision is subject to more than one reasonable interpretation, it is ambiguous and should be construed against the insurer and in favor of the insured. *Murphy v. State Farm Mutual Automobile Insurance Co.*, 234 Ill. App. 3d 222, 225 (1992). A provision is ambiguous if it is susceptible to more than one reasonable interpretation,

4

but we should only consider reasonable alternative interpretations and not strain to find an ambiguity where none exists. *Hobbs*, 214 Ill. 2d at 17. In general, antistacking clauses do not contravene public policy, but only those that are unambiguous will be given effect. *Grzeszczak v. Illinois Farmers Insurance Co.*, 168 Ill. 2d 216, 229-30 (1995).

¶ 13    The State Farm policy does not specifically mention the term "stacking," but the language set forth above as section "3." under "**Limits**" is what is commonly referred to as an antistacking clause. Stacking involves combining or aggregating the policy limits applicable to more than one vehicle where the other vehicles are not involved in the accident. See *Progressive Premier Insurance Co. v. Cannon*, 382 Ill. App. 3d 526, 530 (2008). In determining whether an ambiguity exists, an antistacking clause cannot be read in isolation. All of the provisions of an insurance contract should be read together. *Glidden v. Farmers Automobile Insurance Ass'n*, 57 Ill. 2d 330, 336 (1974). Reasonableness is the key, and the touchstone is whether the policy is subject to more than one reasonable interpretation. *Bruder v. Country Mutual Insurance Co.*, 156 Ill. 2d 179, 193 (1993).

¶ 14    In *Bruder*, our supreme court considered whether a plaintiff could stack uninsured motorist coverage on two vehicles set forth on a single automobile policy. *Id.* at 191. The policy's limit of liability for uninsured benefits provided that " '[t]he most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury shown in the declarations for "Each Person." ' " *Id.* at 189. Our supreme court held there was no ambiguity when the antistacking clause was read in conjunction with the declarations page because the limit of the bodily injury for "each person" ($100,000) was set forth only once on the declarations page, notwithstanding that it listed two separate vehicles. *Id.* at 193-94. Nevertheless, *Bruder* specifically noted that multiple listings of policy limits on a

5

declarations page could create an ambiguity:

> "It would not be difficult to find an ambiguity created by such a listing of the bodily injury liability limit for each person insured. It could easily be interpreted that an insured should enjoy a total limit of $200,000 in coverage because a figure of $100,000 would be shown for each pickup truck. There would be little to suggest in such a listing that the parties intended that coverage was to be limited to that provided for only one of the two pickup trucks. It would be more reasonable to assume that the parties intended that, in return for the two premiums, two $100,000 coverage amounts were afforded." *Id.* at 192.

Numerous courts, including this one, have followed this rationale and determined that, despite antistacking language in the body of a policy, a declarations page that prints the policy limit more than once can reasonably be interpreted as providing a policy limit that equals the sum of the printed limits.

¶ 15    For example, in *Johnson v. Davis*, 377 Ill. App. 3d 602 (2007), this court determined that stacking was allowed under the policy under consideration because the limits of coverage were listed multiple times, once for each vehicle covered, and four separate premiums were listed on the declarations sheet. *Id.* at 609. The four vehicles under the policy carried underinsured motorist coverage of $50,000 per person and $100,000 per accident. *Id.* at 603. The policy also contained an antistacking provision. *Id.* at 605-06. The underinsured motorist endorsement directed the insured to " 'SEE DECLARATION FOR LIMIT OF LIABILITY AND PREMIUM,' " and the endorsement contained a limit of liability clause which stated that the limit of liability shown in the declarations page was the maximum limit of liability. *Id.* The declarations page listed limits of $50,000 per person four separate times. *Id.* This court held that

a reasonable person could believe the policy provided $50,000 of underinsured motorist coverage for each of the four vehicles carrying underinsured motorist coverage for a total of $200,000 in underinsured motorist coverage. *Id.* at 609.

¶ 16    Recently, in *Cherry v. Elephant Insurance Co.*, 2018 IL App (5th) 170072, we again determined that where a policy's limit of liability section directs the insured to find the limit of underinsured coverage in the declarations under the limit of liability section for underinsured motorist coverage and the declarations page lists four vehicles with four separate limits of liability, an ambiguity is created, which favors stacking. *Id.* ¶ 20. The policy in question there stated that " '[t]he limit of liability shown on the declarations page for the coverages under Part C is the most we will pay.' " *Id*. And just as in *Johnson*, the declarations page listed four vehicles with four separate limits of liability. *Cherry* found that "[t]he abundant case law precedent indicates that this creates an ambiguity favoring aggregation of the four vehicles' limits of liability for underinsured motorist coverage." *Id*.

¶ 17    Here, just as in *Johnson* and *Cherry*, the policy's limit of liability section directs the insured to find the limit of underinsured coverage in the declarations page. The policy specifically states, "The Underinsured Motor Vehicle Coverage limits are shown on the Declarations Page under 'Underinsured Motor Vehicle Coverage—Bodily Injury Limits—Each Person, Each Accident.' " The beginning of the policy contains a key to the policy and provides for underinsured motorist coverage if a "W" is shown. In the declarations page, "W" is repeated 16 times, once for each vehicle covered by the policy. Plaintiff's employer, Enviro-Tech, paid 16 separate premiums for underinsured motorist coverage. The key indicates that "W" stands for underinsured motorist coverage with limits of $250,000 per person and $500,000 per accident. Relying on the above cases, we find that this creates an ambiguity which can reasonably be

7

interpreted as favoring aggregation of the 16 vehicles' limits of liability for underinsured motorist coverage.

¶ 18 Nevertheless, State Farm contends that because the policy goes on to contain language that it claims to be an antistacking provision, such language corrects any ambiguity created on the declarations page. We disagree. As we stated in *Cherry*, "[A]lthough we recognize that the policy has specific antistacking language ***, this clause does nothing to cure the ambiguity created by [the policy's] limit of liability clause combined with the multiple listed limits on the declarations page." *Id.* ¶ 21. When the contents of the body of the policy conflict with the language on the declarations pages, an ambiguity exists that must be construed in favor of the insured. The language in the body of the policy does nothing to cure the ambiguity created in the declarations page. *Yates v. Farmers Automobile Insurance Ass'n*, 311 Ill. App. 3d 797, 800 (2000).

¶ 19                              III. CONCLUSION

¶ 20 We agree with plaintiff that the State Farm policy in issue is poorly written. Because the policy contains inconsistent provisions, we must construe the policy in favor of the insured. Because the words used in the policy were chosen by State Farm, any ambiguity is chargeable to it. See *id*. Accordingly, we find the circuit court's decision granting plaintiff $4 million in underinsured motorist coverage, a sum arrived at by aggregating the $250,000 limit for underinsured motorist coverage on each of the 16 vehicles in plaintiff's employer's insurance policy, was correct.

¶ 21 For the foregoing reasons, we affirm the order of the circuit court of Franklin County entering summary judgment in favor of plaintiff.

¶ 22    Affirmed.

2018 IL App (5th) 170484

NO. 5-17-0484

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

BENNIE BARLOW,                                    )    Appeal from the
                                                  )    Circuit Court of
    Plaintiff-Appellee,                           )    Franklin County.
                                                  )
v.                                                )    No. 16-MR-180
                                                  )
STATE FARM MUTUAL AUTOMOBILE INSURANCE            )
COMPANY,                                          )    Honorable
                                                  )    Eric J. Dirnbeck,
    Defendant-Appellant.                          )    Judge, presiding.

_____

**Opinion Filed:**          **November 29, 2018**

_____

**Justices:**         Honorable Richard P. Goldenhersh, J.

                      Honorable Thomas M. Welch, J., and
                      Honorable Judy L. Cates, J.,
                      Concur

_____

**Attorneys**        Craig L. Unrath, Heyl, Royster, Voelker & Allen, 300 Hamilton
**for**              Boulevard, P.O. Box 6199, Peoria, IL 61602; Patrick D. Cloud, Heyl,
**Appellant**        Royster, Voelker & Allen, Suite 100, Mark Twain Plaza III, 105 West
                      Vandalia, P.O. Box 467, Edwardsville, IL 62025

_____

**Attorneys**        William A. Alexander, Matthew H. Caraway, Sam C. Mitchell &
**for**              Associates, 115 East Main Street, West Frankfort, IL 62896
**Appellee**

_____